**FLYING EAGLE PUBLICATIONS, INC.,**
**Defendant, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**Michael ST. JOHN, Defendant, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**Nos. 5482, 5483.**

United States Court of Appeals
First Circuit.

Jan. 21, 1960.

John H. Sanders, Concord, N. H., with whom Upton, Sanders & Upton, Concord, N. H., was on brief, for appellants.

Alexander J. Kalinski, Asst. U. S. Atty., Manchester, N. H., with whom Maurice P. Bois, U. S. Atty., Concord, N. H., was on brief, for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, . Circuit Judges.

WOODBURY, Chief Judge.

A grand jury in the court below charged that these appellants and two other individuals, in violation of Title 18 U.S. C. § 1461, "on or about or between January 29, February 1, February 6, and February 14, 1957, at Concord in the State and District of New Hampshire * * * did knowingly deposit for mailing or delivery copies of the April, 1957, issue of a publication entitled 'Manhunt' containing obscene, lewd, lascivious, filthy or indecent matter." Motions to dismiss the indictment were denied and trial by jury on pleas of not guilty resulted in verdicts of guilty as to the appellants and verdicts of not guilty as to their two co-defendants. At the close of the evidence the appellants moved for judgments of acquittal and seasonably after verdict filed motions in arrest of judgment but their motions were denied and the court entered the judgments of sentence from which these appeals have been taken.

"Manhunt," described on its cover as "World's Best Selling Crime-Fiction Magazine," is a monthly periodical which has been published since 1953 by the appellant in No. 5482, Flying Eagle Publications, Inc., hereinafter called Flying Eagle. Although the offices of Flying Eagle are in New York, "Manhunt" is printed and mailed to subscribers and news dealers by Rumford Printing Company of Concord, New Hampshire. The appellant in No. 5483, Michael St. John, is the president of Flying Eagle and the owner of at least one half of its stock. The two defendants below who were acquitted were the art director of the magazine and the former executive vice president of Flying Eagle who had owned the balance of its stock.

The statute involved, Title 18 U.S.C. § 1461, as it read at the time of the alleged offense and when the indictment was returned, in pertinent part declared to be nonmailable matter "Every obscene, lewd, lascivious, indecent, filthy or vile article, matter, thing, device, or substance" and provided that: "Whoever knowingly deposits for mailing or delivery anything declared by this section to be nonmailable * * * shall be fined not more than $5,000 or imprisoned not more than five years, or both." The first question we shall consider is whether the appellants' motions to dismiss and in arrest of judgment should have been granted for the reason that the indictment fails to state an offense under the above statute with legally sufficient particularity.

■ The April 1957 issue of "Manhunt" consists of 2 novelettes and 10 short stories, each illustrated, interspersed with 19 short anecdotes. A lurid picture of a partially clothed woman with a smoking pistol in her hand standing over the dead body of a man is on its front cover; its back cover, inside and out, carries advertising. The appellants' motions to dismiss, and their argument here that their motions should have been granted, rest upon the proposition that although the indictment specified the particular issue of "Manhunt" alleged to be nonmailable and the dates and place of mailing it did not specify the particular article or articles therein contained which would be relied upon to prove nonmailability and hence did not adequately apprise the defendants of the nature of the charge laid against them.[1] We find no merit in the contention.

■■ Rule 7(c) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., provides that "The indictment * * * shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." And years ago the Court in United States

v. Cruikshank, 1875, 92 U.S. 542, 558, 23 L.Ed. 588, clearly and succinctly stated the test for the legal sufficiency of an indictment as follows: "The object of the indictment is, first, to furnish the accused with such a description of the charge against him as will enable him to make his defense, and avail himself of his conviction or acquittal for protection against a further prosecution for the same cause; and, second, to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had. For this, facts are to be stated, not conclusions of law alone. A crime is made up of acts and intent; and these must be set forth in the indictment, with reasonable particularity of time, place, and circumstances."

■ It is true that while the indictment sets out the precise issue of the periodical alleged to contain obscene matter and the dates and place of mailing, it does not, as it might well have done, specify the particular story or stories, picture or pictures, anecdote or anecdotes charged to be obscene thereby rendering the entire issue nonmailable. But the magazine is only 64 pages from cover to cover, and it does not seem to us that too heavy a burden was placed on the appellants by putting them on notice to meet the charge that any one or more or even all of the stories, pictures or anecdotes contained matter declared to be nonmailable. The indictment sets out in general language every essential element of the offense charged. Thus it complies with the accepted test. If the appellants felt that they were seriously hampered in making their defense they could have moved under Criminal Rule 7(f) for a bill of particulars. Since they did not do so, we may assume that they were sufficiently informed of the charge they would have to meet at the trial. See Billingsley v. United States, 8 Cir., 1926, 16 F.2d 754, 756, and see also Cefalu v.

---

1. The appellants do not contend that the indictment is so loosely drawn that it would not afford them protection from further prosecution under § 1461 for anything appearing in the April 1957 issue of "Manhunt."

United States, 10 Cir., 1956, 234 F.2d 522.

The appellants also contend that the word "article" in the statute should be construed as referring to each separate story, illustration or anecdote in the magazine wherefore they assert that the indictment is bad for duplicity in that two or more distinct offenses were joined in a single count. We do not reach this contention, however, for it was first advanced in support of the motions for acquittal made at the close of the evidence whereas under Criminal Rule 12(b) (2) it should have been asserted by motion before trial.

The next question for our consideration is whether the material which the court below ruled admissible in evidence to establish the charge laid in the indictment is legally sufficient to take the case to the jury.[2]

It is well settled that the words "indecent, filthy or vile" as used in the statute are limited in their meaning by the preceding words "obscene, lewd, lascivious." United States v. Keller, 3 Cir., 1958, 259 F.2d 54, 57, see also Swearingen v. United States, 1896, 161 U.S. 446, 450, 16 S.Ct. 562, 40 L.Ed. 765. As used in the statute all the adjectives have reference to matters of sex. "However, sex and obscenity are not synonymous. Obscene material is material which deals with sex in a manner appealing to prurient interest." Roth v. United States, 1957, 354 U.S. 476, 487, 77 S.Ct. 1304, 1310, 1 L.Ed.2d 1498. That is to say, as the Court goes on to point out it is "material having a tendency to excite lustful thoughts." And the Court, quoting Webster's New International Dictionary (unabridged, 2d ed. 1949) defined prurient as "* * * Itching; longing; uneasy with desire or longing; of persons, having itching, morbid, or lascivious longings; of desire, curiosity, or propensity, lewd * * *." In short, if we may paraphrase, obscene material is material which excites an unwholesome or unhealthy interest in sex; it is material which portrays sex with a loose-lipped, sensuous leer. Obscene material, however, is not to be judged by its effect upon particularly susceptible persons. The test, according to the case last cited (354 U.S. at page 489, 77 S.Ct. at page 1311), is "whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest."

This test, like the test for due care, creates an illusory sense of certainty. Perhaps then, as in negligence cases, juries should be given wide latitude in applying it. But, while we may assume that a jury would accurately reflect the contemporary standards of the particular community from which it was drawn, we are dealing here with a federal statute having national scope and no doubt community standards differ rather widely over the country at large. Material countenanced in one community may well be regarded as intolerable in another. Moreover, in its application the statute may, as in this case, impinge upon the fundamental freedom of the press guaranteed by the First Amendment, and "[T]he door barring federal and state intrusion into this area cannot be left ajar; it must be kept tightly closed and opened only the slightest crack necessary to prevent encroachment upon more important interests." Roth v. United States, supra, 354 U.S. 488, 77 S.Ct. 1311. Thus to give the statute some uniformity in its application and to prevent abridgment of the freedom of the press, we think that courts should very carefully scrutinize material alleged to be obscene before submitting it to a jury.

With these considerations in mind we turn our attention to the six stories, with their accompanying illustrations, which the court ruled the jury could find to be obscene.

2. The court, stating that it had read the entire magazine, ruled that six of the stories it contained, with their illustrations, could be found by the jury to be obscene and hence nonmailable.

The six stories submitted to the jury do not have even the slightest redeeming social significance or importance. Nor do they have any claim whatever to literary merit. In general, their dominant theme is illicit, often meretricious, sexual intercourse combined with a subtheme of violent crime, usually homicide. But while the stories are replete with anatomical references to breasts and thighs and hints of sexual intercourse accomplished or to come there is no description of the sexual act in any of them. Indeed, in several of the stories the sexual act is frustrated at the last moment by the intervention of a crime of violence. It is apparent that the magazine is published only for the cheapest of sensationalism and for the "commercial exploitations of the morbid and shameful craving for materials with prurient effect." Mr. Chief Justice Warren, concurring in Roth v. United States, supra, 354 U.S. 496, 77 S.Ct. 1315.

All six of the stories have definitely weird overtones and can certainly be characterized as crude, course, vulgar, and on the whole disgusting. But tested by the reaction of the community as a whole—the average member of society—it seems to us that only the feature novelette, "Body on a White Carpet," and the illustration appearing on page 25 accompanying the story entitled "Object of Desire," could be found to fall within the ban of the statute as limited in its application by the important public interest in a free press protected in the First Amendment.

The Court, therefore, did not err in denying the defendant's motions for acquittal. Its error was in not granting the defendants' motion to strike to the extent of permitting the jury to return verdicts of guilty only on the basis of its conclusions with respect to the novelette and illustration mentioned above instead of on the basis of the six stories with their illustrations which it told the jury it might consider in deciding whether the issue contained matter which was obscene.

The other questions argued on this appeal do not need to be considered for they are not likely to arise at another trial.

Judgment will be entered vacating and setting aside the judgments of the District Court and remanding the cases to that court for further proceedings consistent with this opinion.