Froessel, J.
After a joint trial, each of the defendants was convicted of the crime of violating section 1141 of the Penal Law, which in relevant part provides: “ A person who sells *303 * * * or has in his possession with intent to sell * any obscene * * * book * * * [i]s guilty of a misdemeanor ’ ’.
When these cases were before us last year, we held that subdivision 1 of said section 1141 required proof of scienter, and, thus construed, the statute was not violative of the Constitution of the United States (People v. Finkelstein, 9 N Y 2d 342). We reversed the convictions and ordered new trials, however, “ so that, although the People have the burden of proof, defendants may have an opportunity to testify or offer proof, if they desire, in regard to the presence of salacious literature in their possession for sale ” (id., at p. 346).
At the new trial, the only witness was Detective John Dell. He stated that at about 2:00 p.m. on December 30, 1958 he entered the Times Square Book Bazaar and observed defendant Schaeffer at a cash register. Dell found on a shelf a copy of a book entitled “ Queen Bee ” and a copy of a book called “ Garden of Evil”. Dell showed the books to Schaeffer and inquired as to their cost. The latter replied they were $5 each, but he could buy them both for $9. Dell purchased the books, and thereupon placed Schaeffer under arrest. Dell’s subsequent search revealed 70 copies of “ Garden of Evil” and 40 of “ Queen Bee ” under the counter. He told Schaeffer, who had identified himself as manager of the store, that the “ books were pornographic ”, to which the latter replied “ ‘ I have seen much worse than these ’ ”.
At about 2:20 p.m. on the same afternoon Dell entered a bookstore at 251 West 42nd Street. A Mr. Kleinberg (since deceased) was standing on a platform near the cash register. On a shelf Dell found copies of “ Garden of Evil ” and “ Queen Bee ”. Kleinberg told the detective he could purchase them for $9. Dell did so and placed Kleinberg under arrest. Presently defendant Finkelstein entered the store, and identified himself as its owner. Dell told him “ ‘ You know those two books are pornographic ’ ”, to which defendant replied “ ‘ It all depends on how you look at it. I have seen much worse than this. ’ ” Dell arrested Finkelstein, and his search revealed about 7 copies of “ Garden of Evil ” and 8 copies of “ Queen Bee ”.
Defendants neither testified nor called any witness in their behalf. They chose instead to rely on points of law raised by *304 motions to dismiss the informations, and motions addressed to the proof. The three-Jndge Special Sessions Bench unanimously denied all motions, and found defendants guilty as charged. In its opinion, the court found, among other things, that the books were ‘ ‘ in fact, 1 hard-core pornography ’ ” as defined in our recent decision in People v. Richmond County News (9 N Y 2d 578) and that each defendant possessed the requisite knowledge regarding the books he sold. The Appellate Division unanimously affirmed the convictions without opinion.
Both defendants presently contend that the proof fails to establish scienter. In our opinion, however, scienter— ‘1 knowledge by * * * [defendants] of the contents of the book[s] ” (Smith v. California, 361 U. S. 147, 149)—was sufficiently proven beyond a reasonable doubt. As the Supreme Court of the United States said in Smith v. California (supra, p. 154): “ Eyewitness testimony of a bookseller’s perusal of a book hardly need be a necessary element in proving his awareness of its contents. The circumstances may warrant the inference that he was aware of what a book contained, despite his denial. ’ ’ The voluntary admission on the part of each defendant that he had seen worse books than those here involved, the lurid statements on the covers, the $5 selling price boldly stamped on the front cover of each paper-covered book, taken together, warranted the trial court’s conclusion that scienter was established beyond a reasonable doubt.
While Finkelstein challenges only the proof regarding scienter, Schaeffer urges several additional points for reversal. With regard to his claims that section 1141 is unconstitutional, and that the information is insufficient because it does not charge scienter, both points were decided to the contrary in the previous appeal (People v. Finkelstein, 9 N Y 2d 342, supra; see Winters v. New York, 333 U. S. 507, 520).
Schaeffer next urges that he was prosecuted under an ex post facto law adopted by this court on the previous appeal. The simple answer to this contention is that we did not legislate scienter into section 1141; rather we interpreted that section to be “ instinct with the idea of scienter ” (People v. Finkelstein, 9 N Y 2d 342, 344, supra). We noted, moreover (pp. 345-346), quoting from Winters v. New York (333 U. S. 507, 514, supra), *305 that defendant “ can be charged ‘ with knowledge of the scope of subsequent interpretation ’
Schaeffer’s contention that the books involved are not obscene is untenable. Having made “ an independent constitutional appraisal” of the books (People v. Richmond County News, 9 N Y 2d 578, 580, supra), we find ourselves in agreement with the courts below that the books are definitely obscene (id.; Roth v. United States, 354 U. S. 476). Each book contains descriptions of sexual experiences, with emphasis on the abnormal. They focus ‘ ‘ predominantly upon what is sexually morbid, grossly perverse and bizarre, without any artistic or scientific purpose or justification” (People v. Richmond County News, 9 N Y 2d 578, 587, supra). They unquestionably meet the Roth test.
Finally, Schaeffer suggests that the trial court erred in refusing to receive evidence allegedly bearing upon current community standards regarding obscenity. On cross-examination of Detective Dell, counsel established that during the year preceding defendants’ arrest, Dell had seen copies of certain other named publications in bookstores and on magazine stands in New York City. Counsel offered a book and magazines in evidence “ to indicate to your Honors what is the current standard in the community, of literature, and by comparing them you will see whether or not they are permissible ’ ’.
In our opinion, the proffered evidence was properly excluded, as it was irrelevant to the issue of whether or not the two books sold by defendants in this case were obscene. The fact that certain other and different publications were seen in bookstores and on magazine stands in New York City is no indication that they were sold, or read, or that to the average person applying contemporary community standards (Roth v. United States, supra) they were not obscene.
The judgments of conviction should be affirmed.