City of Chicago, a Municipal Corporation, Plaintiff-Appellee, v. John Doe, a Seller and Exhibitor at Store Located at 36½ North Dearborn Street, Chicago, Illinois, i. e., Charles Kimmel, Defendant-Appellant.

Gen. No. 49,101.

First District, Third Division.
April 2, 1964.
Rehearing denied April 21, 1964.

Howard T. Savage, of Chicago, for appellant.

John C. Melaniphy, Corporation Counsel, of Chicago (Sydney R. Drebin, Assistant Corporation Counsel, and Allen Hartman, Special Assistant Corporation Counsel, of counsel), for appellee.

MR. JUSTICE SULLIVAN delivered the opinion of the court.

This is an appeal by the defendant from the judgments entered in the Municipal Court of Chicago in two cases wherein the defendant was found guilty of having violated chapter 192-9 of the Municipal Code of Chicago. Defendant waived a jury in both cases and was fined $200 and $10 costs in 62 MC 131232, and $50 and $10 costs in 62 MC 131231. The defendant

was charged with knowingly exhibiting and selling two obscene magazines on March 6, 1962 (62 MC 131232) and one obscene magazine on March 8, 1962 (62 MC 131231) in violation of the ordinance.

The questions presented to this court are (1) whether there was evidence that any of the three magazines involved are obscene, and (2) whether the proof offered was sufficient to show scienter on the part of the defendant.

The facts are substantially these:

On March 6, 1962, Wayne Thompson, a Chicago police officer assigned to the Prostitution and Obscene Matter Division, entered defendant's store at 36½ N. Dearborn Street in the City of Chicago with his partner, Michael Dearham. While looking at magazines on a rack at the south wall of the store an unidentified person entered and asked the defendant if he had any new books in, "the usual ones you keep alongside the cash register." The defendant showed the customer a book which was later identified as Baroness Steel's Museum of Torture, which was received in evidence. The customer made no purchase and left the premises. Officer Thompson then asked the defendant if he could see these books. The defendant took Baroness Steel's Museum of Torture from alongside his cash register and showed it to Thompson. Thompson asked if it was any "good." Defendant responded "it must be. I sell a lot of them." He then asked defendant if he had read the book and defendant responded "yes, but what I like you may not." Thompson then asked defendant if the book was "pretty hot," to which defendant answered "yes." The book was then purchased by Officer Thompson at the asking price of $4.50. When Officer Thompson paid the defendant the $4.50 for Baroness Steel's Museum of Torture the defendant advised him that if he brought the book back he would receive a

461

$2 credit toward the next issue of this type of magazine.

Officer Thompson then took from the book racks another book entitled Secret Pleasures, which was stapled in such a way so that the front half and back half of the book were stapled to the front and back covers, respectively, permitting only the center page to be opened. Officer Thompson paid the defendant $2 for this book. This book was admitted in evidence.

On March 8, 1962, two days after the purchase by him of plaintiff's Exhibits 1 and 2, Officer Thompson returned to defendant's store and there found on one of the shelves a magazine entitled Spice. He had a conversation at that time with the defendant with respect to whether new books had been received by the defendant, to which the latter responded in the negative. He paid 50 cents for the magazine and left. The magazine Spice was admitted in evidence at the trial. A cut appears through the top edge of this magazine.

Michael Dearham, another Chicago police officer, testified that he was with Officer Thompson on March 6, 1962, and that his testimony would corroborate that of Officer Thompson with respect to his conversations with the defendant in each and every incident on that date.

The defendant, Charles Kimmel, testified that he sold Officer Thompson Baroness Steel's Museum of Torture, which was shipped to him by mail from New Jersey. He denied having sold Secret Pleasures to the officer on that day. He testified that Officer Thompson asked him if he could "have one of those books," which he sold him for $4.50, after which the officer left the premises.

The defendant denied having had knowledge of the contents of any of plaintiff's three exhibits, but admitted looking at their covers. He also admitted having knowledge that the publisher of Baroness Steel's

Museum of Torture published other magazines of the same order. He explained the stapling of the pages together by saying that was done to prevent people from opening and tearing the pages of the magazines, some of which got damaged quicker than others. The cut mark in Spice, he stated, was placed there by the distributor. This cut mark is at the top of the magazine and goes through all of the pages, including the front and back covers. The defendant admitted being able to read English, having completed a grammar school education.

Based upon the foregoing evidence, the trial court found that plaintiff's Exhibits 1, 2 and 3 were obscene, after stating its understanding of the criteria to be considered in determining whether the exhibits appealed to prurient interests.

The defendant contends that no evidence was proffered or appears in the record to prove necessary elements of the offenses allegedly committed by him.

Section 192.9 of chapter 192 of the Municipal Code of Chicago, 1939, as amended, provides in part as follows:

"It shall be unlawful for any person knowingly to exhibit, sell, print, offer to sell, give away, circulate, publish, distribute, or attempt to distribute any obscene book, magazine, pamphlet, paper, writing, card, advertisement, circular, print, picture, photograph . . . image, instrument, . . . drawing, or other article which is obscene. Any person violating any provisions of this section shall be fined not less than $20.00 nor more than $200.00 for each offense.

"Obscene for the purpose of this section is defined as follows: whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appears to prurient interest."

463

The charge against the defendant covers the sale of obscene publications. The law is well settled that if a communication is obscene it does not enjoy the protection of the First or Fourteenth Amendments to the U.S. Constitution and may result in the prosecution and conviction of one who indulges in its exhibition, sale and distribution. Roth v. United States, 354 US 476; Chaplinsky v. New Hampshire, 315 US 568; City of Aurora v. Warner Bros. Pictures Distributing Corp., 16 Ill App2d 273, 147 NE2d 694.

In the Roth case the United States Supreme Court declared the test of obscenity to be (354 US at 489): ". . . whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest."

The Illinois Supreme Court in the case of American Civil Liberties Union v. City of Chicago, 3 Ill2d 334, 121 NE2d 585, which was cited with approval in Roth v. United States, 354 US 476, said the following at page 345:

> "The doctrine that a book must be considered as a whole does not, of course, mean that obscene matter becomes protected simply by being bound in the same cover with innocent matter."

Section 192.9, chapter 192 of the Municipal Code of Chicago must have been drafted having in mind the case authority, as it closely follows the various elements mentioned in those authorities.

The defendant's argument is that there was no evidence showing contemporary community standards, nor the appeal of the contents of the magazines to prurient interests, and that they were, in fact, not obscene.

The trier of the facts in an action such as this, whether it be a jury or a trial court sitting without a jury as in this case, is the judge of the common

464

conscience of the community. Roth v. United States, 354 US 476. The trier of the facts has also been held to be the ". . . embodiment of community standards, competent to judge a challenged work against those standards. . . ." Smith v. California, 361 US 170. It has even been held that contemporary community standards are the subject of judicial notice. People v. Finkelstein, 11 NY2d 300, 229 NYS2d 367, cert den, 371 US 863.

Both plaintiff and defendant cite Womack v. United States, 294 F2d 204, in support of contradictory propositions, i. e., that the evidence supports the judgment that the materials are obscene, and that there is no evidence that the materials are obscene. In that case the defendant was convicted of mailing information as to how obscene matter could be obtained and for mailing such matter. The court in its opinion on page 205 said:

> "Whatever may be the precise meanings of 'obscene' and 'filthy,' or however broad or liberal community standards may be alleged to be, the photographs presented as Government exhibits in this case are within the definitions and outside the standards. No concept of art as art could include them. No concept of community standards could permit them.

> "Mr. Wigmore says: 'All evidential sources . . . are divided into three classes, namely, Testimonial, Circumstantial, and Autoptical.' Concerning the latter he says: 'A fact is said to be evidenced autoptically when it is offered for direct perception by the senses of the tribunal without depending on any conscious inference from some other testimonial or circumstantial fact.'

> "The photographs which are exhibits in this case are conclusive autoptical proof of obscenity and filth."

465

In the Womack case after the trial judge refused to consider the proffered testimony as to community standards, the record was devoid of any evidence in this respect, and his decision therefore must have been based on his conception of contemporary community standards, of which he quite properly took judicial notice.

The defendant could have offered evidence that plaintiff's Exhibits 1, 2 and 3 were in fact within the accepted standards of the community but this he did not do.

The reviewing courts have consistently applied what they considered contemporary community standards as a matter of law, without the benefit of evidence. Manual Enterprises, Inc. v. Day, 370 US 478; Roth v. United States, 354 US 476; State v. Hudson County News Co., 78 NJ Super 327, 188 A2d 444; Womack v. United States, 294 F2d 204.

■ This court has before it the exhibits offered in this case and it has scanned them, and is satisfied that the magazines sold by the defendant were obscene as defined by the ordinance. Defendant did not offer proof, nor, in our opinion, could he have offered proof that the magazines were of a type countenanced by contemporary community standards, or possessed any literary value. They are patently offensive and obscene and, in the opinion of this court, were designedly published and distributed having that in mind. The obscenity of these magazines from a perusal of the same is ineluctable.

As to the second point raised by the defendant, that the proof offered was insufficient to show scienter on the part of the defendant, the record clearly shows that, as to the magazine known as Baroness Steel's Museum of Torture, the court chose to believe the plaintiff's witnesses, which it had a right to do, to the effect that the defendant had read this magazine. That fact, coupled with the sales price of

$4.50 for this small paper covered book, where the defendant kept this book in his store (next to the cash register), sufficiently shows that plaintiff had proven by a clear preponderance of the evidence that the ordinance had been violated.

As to the book called Secret Pleasures, which sold for $2, and which was stapled as described above, the defendant admitted having seen the cover. He could not have missed the picture in the center of the book in stapling the same. The pictures on the cover and in the center of the book are in themselves offensive and obscene, and would to the average person applying contemporary community standards appeal to prurient interests.

As to the magazine Spice, which sold for 50 cents, and was taken from the book rack by the plaintiff's police officer, for which he paid the defendant, a casual observation of the front and back covers of this magazine, and the fact that on the front cover the words "Adults Only" appear, constitute, in our opinion, a clear preponderance of evidence of scienter. The front and back covers of this magazine contain offensive and obscene pictures.

Eyewitness testimony of a bookseller's perusal of a book hardly need be a necessary element in proving his awareness of its contents. The circumstances may warrant the inference that he was aware of what a book contained, despite his denial. Smith v. California, 361 US 147.

The judgments in this case were therefore supported by the evidence and the plaintiff has proven by a clear preponderance of the evidence the charges made in both complaints. The judgments of the trial court in case No. 62 MC 131232 and in case No. 62 MC 131231 are affirmed.

Judgments affirmed.

SCHWARTZ, P. J. and DEMPSEY, J., concur.