**UNITED STATES of America, Appellee,**

v.

**Joe DAVIS, Defendant-Appellant.**

**No. 455, Docket 29518.**

United States Court of Appeals Second Circuit.

Argued April 28, 1965.

Decided Dec. 6, 1965.

Waterman, Circuit Judge, dissented.

James M. Brachman, Asst. U. S. Atty., New York City (Robert M. Morgenthau, U. S. Atty., for the Southern District of New York, and Michael W. Mitchell, Asst. U. S. Atty., New York City, on the brief), for appellee.

Herbert A. Lyon, Kew Gardens, N. Y., on the brief for defendant-appellant.

Before LUMBARD, Chief Judge, and WATERMAN and FRIENDLY, Circuit Judges.

LUMBARD, Chief Judge.

This is an appeal from a conviction and sentence after a trial by a jury, in the Southern District of New York, for violation of 18 U.S.C. §§ 1461, 1463, sending obscene matter through the mails and mailing matter in indecent wrappers.

Counts one through five of the indictment charged that on various occasions Davis mailed packages whose wrappings bore an obscene label advertising defendant's "party records," in violation of § 1463. Counts twenty-two and twenty-three charged the mailing of two obscene phonograph records, in violation of § 1461, and counts six through twenty-one charged the mailing of advertising which

described the means for procuring the obscene records of counts twenty-two and twenty-three, in violation of § 1461.[1] As it is not alleged that these advertisements are themselves obscene, there must be a finding that the phonograph records are obscene in order to find the advertisements violative of § 1461.

At trial, the parties stipulated the existence of each and every element of the crime charged, except that the phonograph records and labels were obscene. In oral argument before this court both sides declared they had agreed to submit the remaining issue to the jury without any testimony of any kind. The opportunity to require and present evidence about community standards of obscenity existed but was declined by that agreement. Compare United States v. Klaw, 350 F.2d 155 (2 Cir. 1965). The jury had before it only the labels, the advertisements, the phonograph records and record jackets.

The jury returned a verdict of guilty on all counts. Judge Kaufman, who presided at the trial, then made an independent examination of the evidence and determined that the finding of guilty by the jury did not invade Davis' First Amendment rights to freedom of the press and speech as the materials at issue were obscene and therefore not entitled to First Amendment protection. He imposed a fine of $1,000 on count one, and concurrent six-month suspended sentences on the remaining counts.

■ Davis does not allege as error any portion of Judge Kaufman's charge or the procedure employed by the district court. The sole issue before us is the same as was before Judge Kaufman, whether Davis is entitled to First Amendment protection because the labels and records are not obscene. We find that they are obscene under the tests established by the Supreme Court, and we affirm the judgment below.

■ To determine whether the matter before us is obscene, we must apply the now familiar test:

> "[W]hether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to the prurient interest." Jacobellis v. State of Ohio, 378 U.S. 184, 191, 84 S.Ct. 1676, 1680, 12 L.Ed.2d 793 (1964); Roth v. United States, 354 U.S. 476, 489, 77 S.Ct. 1304, 1 L.Ed. 2d 1498 (1957).

Further, we are instructed to determine whether the material is patently offensive. Mutual Enterprises, Inc. v. Day, 370 U.S. 478, 486, 82 S.Ct. 1432, 8 L.Ed. 2d 639 (1962).

Applying these tests, we find that both the labels and the records are obscene. The records are without "literary or scientific or artistic or any other form of social importance." Jacobellis v. State of Ohio, supra, 378 U.S. at 191, 84 S.Ct. at 1680. Each record jacket and record "taken as a whole" makes abundantly clear the meaning and content of the recording. We also find that, despite the feeble attempt at double-entendre humor on the mailing label, the sole intended meaning of the label is obvious and far exceeds the permissible level of candor.

The appellant's other contentions do not merit discussion.

The judgment is affirmed.

WATERMAN, Circuit Judge (dissenting):

I dissent. I would reverse.

At trial, on November 18, 1964, the parties orally agreed that certain acts took place; the defendant conceded that the Government could call witnesses who would testify to these acts and thereby the commission of the offenses would be proven if the material mailed, exhibits in the case, were non-mailable. The exhibits were appellant's yellow gummed labels affixed to the outside of his pack-

---

1. Count twenty-four, charging Davis with conspiring to violate § 1461, was dismissed during trial on the government's motion.

ages, informing that he had "sexsational" party records available, his advertising circular, two phonograph records, and the respective jackets containing those records.

As stated in the majority opinion, the only contested issue was whether the phonograph records and labels were obscene so that the acts of the defendant in causing them to be sent through the mails violated 18 U.S.C. §§ 1461, 1463. And so, as stated in the opinion of the majority, the issue of defendant's guilt was submitted to the jury without the introduction into evidence of any oral testimony whatsoever. The phonograph records were played to the jury. After the exhibits were introduced into evidence and the records played to the jury, the Government rested, the defense put in no case whatever and moved to dismiss. The motion was denied, and the trial judge in his charge to the jury so adequately explained the nature of the case that no exception to the charge was taken by either party and no request for an additional or explanatory charge was made. The jury was out but thirty-five minutes and returned a guilty verdict. A motion by the defense to set the verdict aside and for an acquittal was denied, and the judge, believing that he, as well as the jury, was required to ascertain whether the exhibits were obscene, found that they were by any test that he had been able to observe.

The trial judge had in mind that this case involves "rights derived from the First Amendment guarantees of free expression" and believed that a judge at the trial level "cannot avoid making an independent constitutional judgment on the facts of the case as to whether the material involved is constitutionally protected." Jacobellis v. State of Ohio, 378 U.S. 184, 190, 84 S.Ct. 1676, 1679 (Brennan, J., opinion upon announcing the Court's judgment, in which Goldberg, J. concurred). If it were necessary for me also to accept this responsibility I would hold that the yellow mailing labels had no "literary or scientific or artistic or any other form of social importance" and

that they exceeded the permissible level of candor which the First Amendment protects. On the other hand, they are so cheaply repulsive that it is incredible to me that the prurience of any person would be excited from reading them or from anticipation of receipt of the "sexsational" records. As to the records, I must say that they bored me, and testing subjectively "appealing to the prurient interest" neither of them did so appeal. Nevertheless, my personal reaction to these records, different from the reaction of the twelve jurors and the trial judge, is not the basis for my dissent. I would reverse on the ground that the verdict below was not supported by sufficient evidence.

The jury was charged that the issue for them to decide was whether the material would be deemed obscene by the average person, applying contemporary community standards, and the judge went on to charge that in "determining community standards you must try to use your experience in life, the observations you have made in your every-day affairs * * * so that you can make an objective determination based upon community standards of the nation of which you have been aware."

No evidence was introduced tending to show what these contemporary community standards of the nation were. The judge in his comments confirming the result the jury reached stated that his view was based on an attempt "to divine what I consider to be the mores of the country based on my years of experience and travel and observations and readings * * * *"

The practice of allowing the fact finder to decide the issue of obscenity vel non by appraising the challenged material in light of a court-elaborated definition of obscenity has been established in this circuit and was adhered to in the present case. The announced rationale of this practice is that obscenity "is a function of many variables, and the verdict of the jury is not the conclusion of a syllogism of which they are to find only the minor premises, but really a small bit of legis-

# 617

lation ad hoc, like the standard of care." L. Hand, J., in United States v. Levine, 83 F.2d 156, 157 (2 Cir. 1936). Accepting the jury's conclusion to be a small bit of legislation it made little sense to require the prosecution to present testimony tending to prove that the material in question was in fact unacceptable to the community or that the material would arouse the prurient interest of the average man. This view of the jury's function has even led several courts to go further and to exclude all evidence of community standards offered by the defendant. E. g., Kahm v. United States, 300 F.2d 78 (5 Cir.), cert. denied, 369 U.S. 859, 82 S.Ct. 949, 8 L.Ed.2d 18 (1962); People v. Finkelstein, 11 N.Y.2d 300, 229 N.Y.S.2d 367, 183 N.E.2d 661, cert. denied, 371 U.S. 863, 83 S.Ct. 116, 9 L.Ed.2d 100 (1962). But cf. Smith v. People of State of California, 361 U.S. 147, 160, 169, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959) (Frankfurter, J., concurring; Harlan, J., concurring in part, dissenting in part). See generally 76 Harv.L.Rev. 1498–1501 (1963).

The analogy of the jury's function in a criminal case in which obscenity is charged to the jury's function in a civil negligence case was fairly persuasive as long as the jury's decision that certain material was obscene could be viewed as the legal expression of revulsion against the material by the community from which the jury was drawn because of the way the material dealt with sexual matters. But we now know that the standard is national, not local. Jacobellis v. State of Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964). I am not persuaded that, without some evidence other than the records and labels and each juror's own personal reaction thereto, a jury can appraise such material and can accurately express in the light of national community standards the level of national community tolerance. The view that a jury is not well suited to express the national sense of what is obscene has led some courts carefully to scrutinize the allegedly obscene material before submitting it to

a jury. Flying Eagle Publications, Inc. v. United States, 273 F.2d 799 (1 Cir. 1960). This same belief is reflected in United States v. Klaw, 350 F.2d 155 (2 Cir. 1965), decided by us on July 25, 1965 after the appeal in the present case had been argued and before disposition of the appeal. In Klaw we reviewed all the recent cases in this field that had been brought to our attention or had been uncovered by our research, and there we reversed a conviction for mailing obscene matter which was obtained by allowing the jury to appraise certain photographs and drawings of the "bondage genre," see United States v. Klaw at 157, in light of an admittedly correct elaboration of obscenity law by the trial court. In holding that the Government was required to introduce evidence that the challenged material in fact appealed to the prurient interest of either the average man or typical deviate this court said:

> Whatever the value of mere "autoptical" evidence in other contexts, it should not readily be countenanced in this area. Otherwise, too easily the Government's test might allow a jury to equate patent offensiveness to prurient appeal, thus obliterating the conjunction that has been thought indispensable.

> \*    \*    \*    \*    \*    \*

> The state of the record gave the jurors impermissibly broad freedom to convict just because, having no more informative evidence than the material itself, they might think that the average person would "recognize" that the material has prurient appeal. But again, *to whom?* In this case, the jury had insufficient evidence even to "recognize" that the material appealed to the prurient interest of the average person. 350 F.2d 155, 167.

Under the requirements we have placed upon the Government by United States v. Klaw, the Government was deficient in its proof. As the trial judge allowed the Government to get to the jury with-

**618**

out introducing any evidence tending to prove that defendant's records or labels appealed to the prurient interest of either the average man or the typical deviate recipient it is my belief that the conviction should be reversed.[1] My brothers contend that the proof we held was necessary to effect a conviction under 18 U.S.C. § 1461 in United States v. Klaw is not applicable here. Inasmuch as the defendant expedited the trial by agreeing that he performed the acts necessary to convict if the material mailed were non-mailable and agreed to present the issue of mailability to the jury "without testimony of any kind" they hold that the defendant "stipulated the existence of each and every element of the crimes charged." In so doing, they overlook the fact that the defendant moved to dismiss after the parties had tried the case pursuant to the agreement. Even if one places no weight whatever on defendant's obvious strategy, my brothers at best would seem to hold that defendant agreed to be bound by the practice that the parties supposed existed at the time of the trial, and therefore his conviction must be affirmed. With this approach I cannot agree, either. Defendant's motion to dismiss, overruled, and to which overruling defendant preserved his position, is now being reviewed by us, and the law of this circuit at this time requires us to order that that motion be granted for failure of the Government's proof. Of course, the agreement below was merely an affirmative agreement that certain facts were in existence, and if the Government were put to proof the Government could prove them; but it never was a stipulation concerning the limits of proof required to effect a conviction. The defendant never conceded that he was guilty as charged in the indictment.

---

1. The attempt of the trial judge to "divine * * * the mores of the country" cannot cure this defect. This attempted divination certainly cannot be justified as the taking of judicial notice of facts commonly known or capable of certain verification. Perhaps a court may judicially notice contemporary community standards insofar as they constitute "legislative facts" relating to the issue of obscenity, but even judicial notice of this type ought not to be allowable unless the parties are given an opportunity to furnish data bearing on the issue. See McCormick, Evidence § 329 (1954).