251 So.2d 298 (1971)
Robert MITCHUM et al., Appellants,
v.
STATE of Florida, Appellee.
No. N-506.
District Court of Appeal of Florida, First District.
August 12, 1971.
*299 Paul Shimek, Jr., Pensacola, for appellants.
Earl Faircloth, Atty. Gen., and Raymond L. Marky, Asst. Atty. Gen., for appellee.
SPECTOR, Chief Judge.
This is the second interlocutory appeal brought by appellants to review a second order restraining appellants from selling or offering for sale certain named magazines or other publications of the same or similar character.
The order under review was entered in connection with the enforcement of Chapter 847, Florida Statutes, F.S.A., the state obscenity and pornography laws. Earlier decisions have been rendered by this court in this case which are reported at 234 So.2d 420, 237 So.2d 72, and 244 So.2d 159. Reference to these decisions will afford additional factual background which may be of interest to the reader.
The first point on appeal is as follows: "The State of Florida must produce affirmative evidence that the publications alleged to be obscene are, in fact, obscene, otherwise the order declaring obscenity is a judicial nullity."
The proposition of law raised by the point must be rejected. As stated, it reflects a basic confusion on appellants' part as to the distinction between a void judgment, order or decree and one which is merely voidable. For the order under review herein to be held a nullity, it must be shown that the court below was without power or jurisdiction to enter it. And it has ever been so. See Ponder v. Moseley et al., 2 Fla. 207 (1848), where the court at page 267 approved the rule laid down in Elliott et al. v. Peirsol, et al., 1 Pet. 328, 340, 7 L.Ed. 164, that "`[When] a court has jurisdiction [of the person and subject matter], it has a right to decide every question which occurs in the cause, and whether [this] decision be correct or otherwise, its judgment until reversed is regarded as binding in every other court.'" And, further, 2 Fla. at pages 267-268: "The foregoing authorities as well as many others not supposed necessary to be referred to, clearly show that judgments of courts of general or competent jurisdiction [as is the court below], are not considered under any circumstances as mere nullities, but as records importing absolute verity and of binding efficacy, until reversed by a competent appellate tribunal. * * *" See also Malone v. Meres, 91 Fla. 709, 109 So. 677 (1926).
In light of the well settled principle of law discussed above, appellants' contention that the order reviewed herein is a nullity is obviously based on euphoric optimism which is wholly unsupported by any authority. Examination of appellants' argument under this point indicates that the real issue raised is the contention that the absence of testimonial evidence, separate and apart from the magazines themselves considered as exhibits, renders the order of the lower court prejudicially erroneous and therefore reversible.
In support of the latter proposition, appellants rely heavily on Justice *300 Frankfurter's concurring opinion in Smith v. California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205, reflecting his view, not that of the court, that expert testimony is necessary to a finding of obscenity by a court. That view being found only in a concurring opinion is, of course, not binding upon us as precedent nor are the holdings in the obscenity cases from several of our sister states which require testimonial evidence as a predicate for a finding of obscenity necessarily binding on this court. We have read them, of course, and while they appear sound and scholarly, they simply do not reflect our view of the law relating to the subject matter. In essence, those cases encroach upon the entire concept of judicial notice as approved by our courts as well as those of other jurisdictions. Long ago, it was held that in proper circumstances "judicial notice" is superior to evidence since it fulfills the object which evidence is designed to fulfill and makes evidence on the point established by judicial notice unnecessary. Amos v. Moseley, 74 Fla. 555, 77 So. 619. It is defined as the cognizance of certain facts which judges and jurors may properly take and act upon without proof, because they already know them. United States v. Hammers, D.C., 241 F. 542. Courts are presumed to know what everyone knows, 13 Fla.Jur., Evidence § 14. Thus, the question resolves itself into whether the materials here involved are of such character as to establish circumstances whereunder the court may determine the obscenity question without evidence.
We hold that the materials herein are "hardcore pornography" and therefore within the rule announced in United States v. Wild, 422 F.2d 34 (2d Cir.1970), cert. denied 402 U.S. 986, 91 S.Ct. 1644, 29 L.Ed.2d 152, reh. den. 403 U.S. 940, 91 S.Ct. 2242, 29 L.Ed.2d 720. There the government introduced no evidence other than the materials themselves which was claimed to be error. In rejecting the contention, the Court of Appeal reviewed the pertinent cases and held as follows:
"We do not believe, as appellants in effect urge, that the Constitution requires the Government to produce expert testimony about appeal to the prurient interest and contemporary community standards in every obscenity case. Compare Frankfurter, J., concurring in Smith v. California, 361 U.S. 147, 164-167, 80 S.Ct. 215, 4 L.Ed.2d 205, with Harlan, J., concurring in part and dissenting in part, Id., at 170-171, 80 S.Ct. 215. It is clear that such testimony can be necessary on certain facts such as those presented in United States v. Klaw, 350 F.2d 155 (2d Cir.1965), heavily relied on by appellants. However, the present case presents no such peculiar problems of proof.
"We hold that in cases such as this the trier of fact needs no expert advice. As noted above, there was no claim of redeeming social importance. Cf. United States v. A Motion Picture Entitled `I Am Curious-Yellow,' 404 F.2d 196 (2d Cir.1968). One group of slides graphically depicts a sexual act and the other group focuses attention on the erect genitalia of the nude male models. In this context, the issues of prurient appeal and offensiveness to contemporary community standards can be dealt with by a jury without expert help. As the Supreme Court has stated, `in the cases in which this Court has decided obscenity questions since Roth, [Roth v. United States, 354 U.S. 478, 77 S.Ct. 1304, 1 L.Ed.2d 1498] it has regarded the materials as sufficient in themselves for the determination of the question.' Ginzburg v. United States, 383 U.S. 463, 465, 86 S.Ct. 942, 944, 16 L.Ed.2d 31 (1966). Simply stated, hard core pornography such as this can and does speak for itself. (Emphasis supplied.)
"In a remarkably similar case in which a conviction under section 1461 was unanimously affirmed, Judge Prettyman wrote:
"`Most of the difficulty which enshrouds the discussion of the law concerning obscenity *301 and filth develops upon consideration of books and magazine articles. Here arise problems of scienter, the meaning and effect of the whole, the value of the work to proper interests of the public, the contemporary community standards in similar matters, and other baffling problems under our precious right of free speech, discussed in several opinions in Smith v. California. [361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205] But we have no such problem in the case at bar. These are stark, unretouched photographs  no text, no possible avoidance of scienter, no suggested proper purpose, no conceivable community standard which would permit the indiscriminate dissemination of the material, no alleviating artistic overtones. These exhibits reflect a morbid interest in the nude, beyond any customary limit of candor. They are "utterly without redeeming social importance." * * *
"`We think that photographs can be so obscene  it is conceivably possible that they be so obscene  that the fact is uncontrovertible. These photographs are such. United States v. Womack, [Womack v. United States], 111 U.S. App.D.C. 8, 294 F.2d 204, 205-206 (footnote omitted), cert. denied 365 U.S. 859, 81 S.Ct. 826, 5 L.Ed.2d 822 (1961).'
"See also, Kahm v. United States, 300 F.2d 78 (5th Cir.), cert. denied 369 U.S. 859, 82 S.Ct. 949, 8 L.Ed.2d 18 (1962); United States v. Davis, 353 F.2d 614 (2d Cir.1965), cert. denied 384 U.S. 953, 86 S.Ct. 1567, 16 L.Ed.2d 549 (1966). Cf. Manual Enterprises v. Day, 370 U.S. 478, 489-490 and n. 13, 82 S.Ct. 1432, 8 L.Ed.2d 639 (1962) (opinion of Harlan, J.). Judge Bonsal's charge to the jury properly defined obscenity in light of the relevant Supreme Court cases; the jury was capable of applying those tests to this material.
"Finally, we note that appellants' own evaluation of the slides confirms the finding of appeal to the prurient interest. Mishkin v. New York, 383 U.S. 502, 508, 86 S.Ct. 958, 16 L.Ed.2d 56 (1966); Ginzburg v. United States, 383 U.S. 463, 86 S.Ct. 942, 16 L.Ed.2d 31 (1966). In considering the slides, the jury had before it brochures which the appellants had mailed out along with sample slides. These advertisements seem to us to constitute the type of pandering which is relevant to a determination of obscenity. Although appellants contend that Judge Bonsal's charge on the issue of pandering was improper, no such objection was made to this portion of the charge at trial and we need not consider it here. United States v. Re, 336 F.2d 306, 316 (2d Cir.), cert. denied, 379 U.S. 904, 85 S.Ct. 188, 13 L.Ed.2d 177 (1964). Fed.R.Crim.P. 30." 422 F.2d at 35-37.
The above views expressed by the court in Wild were adopted by this court in the informative opinion of this court in Collins v. State Beverage Department, 239 So.2d 613 (Fla.App. 1970). It is clear then that the rule in this jurisdiction is that if the materials before the court are what is termed "hardcore pornography" no testimonial evidence is necessary to support a finding of obscenity. Our review of the evidence in this case impels us to conclude that it is of the same type described in the appendix to the decision in Collins, supra.
The next point raised by appellants is that none of the publications are obscene as a matter of law. The court below found, based on the testimony of witnesses and statements of counsel and appellants, that the publications introduced into evidence are a fair representation of all publications offered for sale at the place of business with which we are involved. Counsel for appellants stated to the trial court that appellants have a right to sell materials of the type involved. No claim was made that the materials were not obscene. Appellants simply rested their right to sell on the Supreme Court's holding *302 in Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969), holding that a private individual may not be prosecuted for possession of obscenity in his home. Appellants' reasoning is that if under Stanley one may possess it, then it follows that such possession may be preceded by possession by a vendor. That extension of Stanley was explicitly rejected by the court in United States v. Reidel, 402 U.S. 351, 91 S.Ct. 1410, 28 L.Ed.2d 813, and United States v. Thirty-seven (37) Photographs, 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822, both decided May 3, 1971.
The court below held it to be unrealistic to say that the publications involved if sold to the public would not find their way into the hands of children and, further, that many of the publications actually use children as models. The court held that the publications offend and in vile and vulgar language describe various sexual criminal acts, including contributing to the delinquency of minors, sodomy, lewd and lascivious behavior, fornication, indecent exposure of sexual organs, abominable and detestable crimes against nature, and buggery.
Some 228 magazines were introduced in evidence, said documents having been produced pursuant to a subpoena and not a seizure. The trial court listed 79 magazines which it had carefully reviewed, among others, and found the following:
"* * * All of the foregoing have been determined by the Court to be hard core pornography and obscene, lewd and indecent material; that their dominant theme appeals to the prurient interests in that their main purpose is to attract the attention of those who are perverted or are morbidly or abnormally curious about sex; that they have no redeeming social value and are patently offensive because they affront contemporary community standards relating to the description or representation of sexual matters. * * *"
A representative listing of the titles of 79 magazines expressly mentioned by the trial court as having been examined by him among the others appears in the order reviewed. Among the titles are the following: HUSTLER, GAY CONFESSIONS, TRICKS, ODD LOVE, PAIRED, YOUNG STUFF, THE BALLERS, SWINGERS, FRUIT, RUT RIDERS, ONE PLUS ONE, BEAUTIFUL BOYS, SCORE, CALL BOY, HALL OF FAME, GAY DAIRY, NEKKIDS, NAKED BOYS, SWITCH, LESBIAN PRACTICES, ORGY, FRENCH FANTASIES, AUTO FELLATIO AND MASTURBATION, DOUBLE UP, BUSY BOX, BLACK ORGIES, CAMPUS NYMPHOS and HAND TO MOUTH. We have examined these magazines and the others which were before the trial court and find all of them except three to be of the class described in the appendix of the Collins case, supra. The three exceptions are PINNED, COVER GIRL and EXCITING. These three, while obscene by our standards, appear to fall within the ambit of permissiveness sanctioned by the United States Supreme Court in Redrup v. New York, 386 U.S. 767, 87 S.Ct. 1414, 18 L.Ed.2d 515 (1967). Apparently, the pictures in these are what the cases refer to as "nudies". They picture only women attired in stockings and garters, the straps on which are arranged generally to frame and thus draw attention to the private parts. While these pictures "show it all", they do differ from the female pictures in the other 200 odd magazines in that the models do not assume exaggerated poses so as to display the inner recesses of the vaginal orifice nor do they depict the models in sexual embraces depicting actual or impending explicit sexual activity as do the bulk of the magazines.
While the constitutional renaissance taking place in Washington in the field of obscenity litigation gives rise to some hope that the high court as presently constituted will recede from the Redrup decision, we must leave that course to the justices and *303 trust that the charade employed by the purveyors of pornography under the purported protection of the First Amendment will be unmasked and recognized for the cancerous canker it casts on our culture.
Although we hold that PINNED, COVER GIRL and EXCITING are protected by Redrup, we consider the impact thereof on this entire case to come within the principle of the axiom, "de minimis non curat lex". By application of that principle, we will not take notice of the appearance of three magazines which are just not THAT obscene among 228 others which are. Indeed, any saving grace which might be said to stem from the trial court's erroneous inclusion of those three magazines within the large box of trash is wholly overcome by the inclusion of the magazine entitled "AUTO FELLATIO", which can best be described as some pervert's perverted idea of depicting perversion. It actually presents page after page containing large-sized pictures of a young man bent forwarding committing the act of fellatio on himself.[1]
In rejecting appellants' contentions that none of the publications are obscene as a matter of law, we heartily agree with the Attorney General's argument that many of the magazines involved here come within the proscriptive influence of Landau v. Fording, 245 Cal. App.2d 820, 54 Cal. Rptr. 177 (1966), affirmed 388 U.S. 456, 87 S.Ct. 2109, 18 L.Ed.2d 1317 (1967), and like cases. The State's argument that the evolution of the law of obscenity during the early part of the last decade reflected a phenomena appropriately termed as "creeping eroticism" was sagaciously predicted by United States District Judge Phillips when, discussing the question of obscenity, he observed that:
"* * * the appetite for such literature increases with the feeding. The more it is pandered to, the more insatiable its craving for something yet more vicious in taste. * * *" United States v. Harmon, 45 F. 414, 418 (D.C.Kan. 1891).
The third point raised by appellants assails the obscenity statute, Section 847.011, Florida Statutes, F.S.A., as unconstitutional and therefore unenforceable. This statute was upheld by the Florida Supreme Court in State v. Reese, 222 So.2d 732 (Fla. 1969), and more recently in Mitchem et al. v. State ex rel. Schaub, 250 So.2d 883, Opinion filed July 9, 1971; and May et al. v. Harper, 250 So.2d 880, Opinion filed July 7, 1971. No useful purpose would be served by an extended discussion of the constitutional issues, it being sufficient to note that no court whose decisions are binding on this court has yet reversed our earlier decisions and those of our State Supreme Court upholding the constitutionality of the state obscenity statute. Indeed, the United States Supreme Court itself has recently in Blount v. Rizzi, 400 U.S. 410, 419, 91 S.Ct. 423, 429, 27 L.Ed.2d 498, 505, citing Freedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649, pointed to the obscenity *304 injunctive statute enacted by the State of New York as a model which the several states should follow in enacting constitutionally valid state obscenity injunctive statutes. That Florida's obscenity injunctive statute is valid under federal constitutional standards is amply demonstrated by comparing the similarity of our statute with that of New York in the most material minute detail.
By the last point raised, appellants contend that the court's finding of a nuisance is unsupported by evidence and even if there were such evidence, the court cannot suppress or invoke a prior restraint on the dissemination of presumptively protected publications. By this point, appellants contend that the order of the court below, being one which restrains the operation of appellants' business is unlawful. This point was abandoned by appellants by their letter to the Clerk of this Court on July 20, 1970, since the point and argumentation thereunder commences on page 51 of appellants' brief, and under our rules briefs cannot exceed 50 pages in length unless the court has granted permission for the filing of an especially lengthy brief. Such permission, although requested, was denied. Paradoxically, appellants' said Point IV, though not sufficient to warrant a reversal, is more meritorious than the first three points to which appellants have devoted their entire permissible brief.
Nonetheless, since the Florida Supreme Court in its recent decision in Mitchem v. State ex rel. Schaub, supra, addressed itself to the propriety of the practice of enjoining the operation of a business involved in the dissemination of publications, it is appropriate that we discuss the issue and state the manner in which the instant case is distinguishable from Mitchem et al. v. State ex rel. Schaub, supra.
First, the Schaub case was reversed because in holding the materials there involved to be obscene, the court relied on the obscenity standards embodied in Section 847.011(10), Florida Statutes, F.S.A. In so doing, the court failed to use the elaborated obscenity test comprised of the factors embodied in the cited statute and in addition to the standard engrafted from A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Massachusetts, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966), by our State Supreme Court in State v. Reese, supra. Justice Carlton correctly stated the law in his opinion in Mitchem et al. v. State ex rel. Schaub, supra, when he stated that the trial court there erroneously failed to take into account the Memoirs test in making the obscenity determination. Of course, the identical error inhered in the testimonial evidence of the witnesses there and since they too confined their assessment of the materials to the standards embodied in the statute only, their testimony was likewise deficient. That defect does not appear in the case at bar since the trial judge's adjudication was predicated upon the Roth test as elaborated in Memoirs and adopted in State v. Reese, supra.
In Schaub, supra, the court also held that a business involved in the dissemination of publications cannot be declared a nuisance in this manner under the controlling precedent of Near v. Minnesota ex rel. Olson, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931). Near involved the abatement, as a public nuisance, of the business of regularly publishing "a malicious, scandalous and defamatory newspaper, magazine or other periodical" by the process of injunction against further publication. It was held that an injunction thereunder issued against the publisher of charges against public officers for neglecting their duty to suppress crime was wholly inconsistent with the constitutional guarantee of freedom of the press. Of course, the principle of Near is one which has met with universal acceptance, it being generally believed that not only does the press have the right to charge public officers with neglecting their official actions, but, indeed, the press may have a duty to do so in keeping with the reasons such broad liberties are guaranteed to it by the constitution.
*305 That case is fully consistent with the understanding that restraint by injunction has traditionally been held to inhibit freedom of speech more seriously than restraint by penalties imposed after publication. However, assuming that material is obscene and that its obscene nature has been determined under appropriate standards and procedural safeguards, a statute authorizing a public official to institute an action for an injunction against the sale or other distribution of obscene material is not constitutionally defective. This result was reached in Kingsley Books, Inc. v. Brown, 354 U.S. 436, 77 S.Ct. 1325, 1 L.Ed.2d 1469 (1957), wherein the New York statute providing for injunction in obscenity cases, which statute is similar to ours, was upheld because appropriate standards and procedural safeguards were provided by the statute.
In Kingsley, Mr. Justice Frankfurter, speaking for the court, pointed out that the due process clause does not restrict a state to the criminal process in seeking to protect its people against the dissemination of pornography and that whether proscribed conduct is to be inhibited by a criminal prosecution or by a qui tam action or by an injunction, or by some or all of these remedies in combination, is a matter within the legislature's range of choice. The court further cautioned that the phrase "prior restraint" is "not a self-wielding sword"; that what is needed in these cases is a pragmatic assessment of the "prior restraint" and its operation in the particular circumstances in light of due process requirements. As noted earlier herein, the procedure of invoking the injunctive remedy in an obscenity case has met with recent approval of the United States Supreme Court in Freedman v. Maryland, supra, and Blount v. Rizzi, supra.
It is under the theory of Near that appellants argued the impermissibility of invoking the State's injunctive processes to restrain the dissemination of publications. Indeed, the appellants only last week, while this opinion was in the process of preparation, have filed their motion for the entry of an order reversing the two interlocutory injunctive orders entered by the court below in this case on the authority of the Schaub case which was decided only three weeks ago by the State Supreme Court.
However, the impact and scope of Schaub is not as extensive as appellants assume. For in Schaub, the court stated:
"We reserve judgment, however, on the issue of whether a nuisance theory, in the proper circumstances, might be applicable to obscenity proceedings." (250 So.2d page 886)
The opinion in Schaub indicates that there were only three exhibits involved, and although there seems to have been a stipulation that such three exhibits were "representative" of the contents of the store, the court held that a finding of obscenity as to all of the books in the store was insufficiently supported by only three exhibits. Additionally, in Schaub, it was pointed out by the court that the three exhibits were not filed as part of the record on appeal before the court nor were they described in the record or in the transcript of hearing. Although the court held that one copy of each item sought to be suppressed must be entered into evidence, the decision seems to dispense with that requirement where a defendant is willing to stipulate that particular exhibits are absolutely representative of the stock offered the public.
The facts in the case at bar are significantly different than those in Schaub. There, only three exhibits were involved, none of which were described in nor included in the record on appeal. Here, there are some 225 exhibits, 79 of which were expressly mentioned by the trial court in its order. All 225 or so magazines are in the record on appeal as exhibits. The trial court stated in its order "that the testimony of the witnesses and statements of counsel for the defendants show that the publications introduced into evidence are a fair representation of all publications offered for sale at the place of business known as *306 The Book Mart". According to the record on appeal, the state served on appellants' counsel a "Notice to Produce" at an impending hearing one copy of each book, magazine, periodical, pamphlet, newspaper, comic book, story paper, written or printed story, article, writing, paper, card, picture, drawing, or photograph, located on the premises where appellants were conducting their business. Further, the record reflects a subpoena duces tecum issued commanding Mr. Dave Ballue, a/k/a Dave Ballew, to testify and have with him on the day of the hearing one copy of each magazine described in exhibit "A" which is attached to said subpoena. Said exhibit "A" lists 214 magazines by title. These magazines which were subpoenaed almost without exception constitute the exhibits which are in the record on appeal. Parenthetically, the three magazines, COVER GIRL, PINNED and EXCITING, which we have held in the forepart of this opinion to be not obscene under Redrup standards, were not included in exhibit "A" which was attached to the subpoena duces tecum and thus must have been included by appellants in an effort to "help" the court below in its deliberations. At the hearing, counsel for appellants stated: "In order to save time, I have thumbed through the booklets that we have with an employee of the corporation selling the material and I will stipulate that the entire evidence in the three boxes that we have here may go into evidence as representative of what is being sold at the store. * * *" In response to the court's inquiry as to whether the materials could be marked as evidence as indicated on the subpoena duces tecum, counsel responded: "Yes, this is fine. As the whole box." The court then inquired if counsel would admit these publications and those of like nature are being offered for sale and counsel again responded: "Yes sir. I stipulate this is representative of what is being sold at the Panama City Book Store, yes."
The above exchange, when taken together with the record of the proceedings before the court and the nature of the multitude of hardcore pornographic magazines which were considered by the court, requires this court to hold that the circumstances of this case are distinguishable from those in Schaub so as to justify and require a holding that the facts here reflect "the proper circumstances" justifying an injunctive order to restrain the dissemination of obscene materials. In Near, the court was not considering unprotected obscenity; in the instant case, we are. Nor does the record here reflect the possibility of only an occasional obscene book among many which were protected. The opposite seems to be true; at best that can be said, there are only a few protected materials among a multitude of magazines which are not. It is clear to us that appellants seek only to sell hardcore pornography  the market for the lesser "girlie" magazines apparently having been exhausted. We so conclude since appellants have not made application to the lower court for modification of its injunctive order so as to make the same less restrictive, as appellants are permitted to do under the decision in Federal Amusement Company v. State ex rel. Tuppen, 159 Fla. 495, 32 So.2d 1 (1947), notwithstanding that this court has tacitly suggested to appellants on two prior occasions in opinions rendered in this cause that such avenue is available and open to them if they can adduce evidence of the intention to operate a business disseminating only protected materials.
Their failure to do so impels the conclusion that hardcore pornography is appellants' game.
The interlocutory order reviewed herein is affirmed and this appeal is dismissed.
RAWLS and JOHNSON, JJ., concur.
NOTES
[1] AUTO FELIATIO was among the magazines considered by the trial court at the time it issued its first restraining order affirmed by this court at 244 So.2d 159, whereunder appellants were enjoined from selling obscene books. The continued possession and sale of this book constituted an act in contempt of the lower court's order, and if it had occurred subsequent to January 26, 1971, the dates upon which we affirmed that order and thus the same became an order of this court, we would entertain a motion to cite appellants and anyone acting in concert with them, including lay or legal advisers, with contempt of this court by singling out the one publication mentioned in this footnote. [Re: Green, 172 Ohio St. 269, 175 N.E.2d 59, rev'd on other grounds, 369 U.S. 689, 82 S.Ct. 1114, 8 L.Ed.2d 198; 17 C.J.S. Contempt § 12, fn. 16; 6 Fla.Jur., Contempt, § 28, fn. 6.] We do not intend to exonerate or excuse appellants' conduct with respect to the rest of the publications. Rather, it is only that failure to invoke stern sanctions swiftly in accordance with the law tends only to engender recourse to the use of tar and feathers, as was the case in what some have termed "less enlightened days".