46 Ill.2d 576 (1970)
264 N.E.2d 153
THE CITY OF CHICAGO, Appellee,
v.
VINCENT GERACI et al., Appellants.
Nos. 42278, 42288 cons.
Supreme Court of Illinois.
Opinion filed November 17, 1970.
*577 HOWARD T. SAVAGE, of Chicago, for appellants.
RICHARD L. CURRY, Acting Corporation Counsel, of Chicago, (MARVIN E. ASPEN and RICHARD F. FRIEDMAN, Assistants Corporation Counsel, of counsel,) for appellee.
Affirmed in part, and reversed in part.
Mr. JUSTICE SCHAEFER delivered the opinion of the court:
The issue involved in these 11 separate appeals which have been consolidated for argument and opinion is whether 17 magazines and one paperback book are obscene. The publications involved were purchased by police officers from the defendants, Walter Bagnell, Charles Kimmel, Joseph Gale, William Stolfa, Vincent Geraci, John Geraci, and James Krueger at various times during 1968, and at different locations. Each case proceeded upon a complaint which charged the defendant with exhibiting and selling one or more obscene publications in violation of the Chicago obscenity ordinance. (Section 192.9, Municipal Code of Chicago.) In each of the cases, which were tried together, the defendant entered a plea of not guilty and filed a motion to dismiss the complaint on the grounds that the ordinance is unconstitutional and that the publications are constitutionally protected. After denial of the motion, each defendant elected to stand upon his motion to dismiss, and the circuit court of Cook County, sitting without a jury, found the publications to be obscene and assessed fines against the defendants. Neither the prosecution nor the defendants offered any evidence other than the publications themselves.
*578 The applicable ordinance provides: "It shall be unlawful for any person knowingly to exhibit, sell, print, offer to sell, give away, circulate, publish, distribute, or attempt to distribute any obscene book, magazine, pamphlet, paper, writing, card, advertisement, circular, print, picture, photograph, motion picture film, play, image, instrument, statue, drawing, or other article which is obscene. Any person violating any provision of this section shall be fined not less than $20.00 nor more than $200.00 for each offense. Obscene for the purpose of this Section is defined as follows: Whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest." (Section 192.9, Municipal Code of Chicago.) We upheld this ordinance against constitutional challenge in City of Chicago v. Kimmel (1964), 31 Ill.2d 202. See also People v. Sikora (1965), 32 Ill.2d 260; People v. De Vilbiss (1968), 41 Ill.2d 135.
In a case of this nature, the court must make an independent constitutional judgment as to whether the publications in issue are obscene or constitutionally protected. (City of Chicago v. Kimmel (1964), 31 Ill.2d 202, 207-08; City of Chicago v. Universal Publishing and Distributing Corp. (1966), 34 Ill.2d 250, 252; Jacobellis v. Ohio (1964), 378 U.S. 184, 190, 12 L.Ed.2d 793, 84 S.Ct. 1676.) We deal here with the materials in the abstract, without evidence of the circumstances surrounding production, sale, and publicity. (Cf. Ginzburg v. United States (1966), 383 U.S. 463, 16 L.Ed.2d 31, 86 S.Ct. 942.) The publications in this case may be divided into five separate categories for purposes of analysis.
The magazine "Arcadia, No. 15", published by Utopia Publications, is a 63-page pictorial containing unretouched photographs, many in color, of completely naked men and women. Although many of the photographs seem contrived to focus attention on the models' genitals, and although men *579 and women are pictured together, they are engaged in various activities of an entirely nonsexual nature. Many of the photographs are posed in the out-of-doors and depict activities that might be thought to occur at a nudist camp. There is some accompanying textual material extolling the virtues of nudism as a way of life. The United States Supreme Court has summarily reversed several obscenity convictions which involved similar nudist magazines containing "photographs of naked men, women and children, principally women, clearly revealing genitals, breasts and other portions of the body normally covered in public." (Sunshine Book Co. v. Summerfield (D.D.C. 1955), 128 F. Supp. 564, 565-66, aff'd, 249 F.2d 114 (D.C. cir. 1957), rev'd per curiam, 355 U.S. 372, 2 L.Ed.2d 352, 78 S.Ct. 365 (1958). See also Rosenbloom v. Virginia (1967), 388 U.S. 450, 18 L.Ed.2d 1312, 87 S.Ct. 2095 (per curiam); Felton v. City of Pensacola (1968), 390 U.S. 340, 19 L.Ed.2d 1220, 88 S.Ct. 1098, rev'g per curiam 200 So.2d 842 (Dist. Ct. App. Fla. 1967).) Since in the realm of first amendment freedoms we are bound by the decisions of the Supreme Court, we must hold that the magazine "Arcadia" is constitutionally protected.
We consider next the magazine "Male Parade No. 1", published by Sunshine Enterprises of Mays Landing, New Jersey. The magazine, designed for homosexuals, consists exclusively of pictures of naked male models posed indoors in such a manner that attention is focused on their genitals. The pictures are not unlike those described in Potomac News Co. v. United States (4th cir. 1967), 373 F.2d 635, 640, rev'd per curiam 389 U.S. 47, 19 L.Ed.2d 46, 88 S.Ct. 233 (1967): "The magazine `Hellenic Sun Number Two' is a collection of photographs of undressed men. Some are in color. There is one of a group of boys. They are posed in the out-of-doors, but the generally languid models are not engaged in outdoor activity. In the composition of the photographs the genitals of the models are made the focal points *580 of the pictures." The Supreme Court has also reversed obscenity convictions involving similar homosexual magazines in Manual Enterprises, Inc. v. Day (1962), 370 U.S. 478, 8 L.Ed.2d 639, 82 S.Ct. 1432, and Central Magazine Sales, Ltd. v. United States (1967), 389 U.S. 50, 19 L.Ed.2d 49, 88 S.Ct. 235, rev'g per curiam 373 F.2d 633 (4th cir. 1967), 253 F. Supp. 485 (D. Md. 1966). In light of these decisions, we must hold that the magazine "Male Parade No. 1" is constitutionally protected.
The third category of publications consists of 14 magazines which contain photographs, many in color, of completely naked female models. The magazines are: "June", Vol. 1, No. 1; "Angel", No. 3; "Bunny", No. 1; "Cutie", No. 1; "Judy", Vol. 1, No. 1; "Pet", No. 2; "Rene", No. 1; "Venus", Vol. 1, No. 3; "Tan", No. 1; "Cici"; "Femmes in Color", No. 1; "Suszette", No. 1; "Teen-Age Nudist"; and "Susy", Vol. 1, No. 1. Many of the models in these magazines appear in a reclining position on a bed or sofa, and all of them are posed seductively with their legs spread in such a way that their genitals are not only clearly revealed but are made the focal point of the photograph. Aside from the nature of the pose, however, none of the models is engaged in any explicitly sexual activity either alone or in conjunction with another person. Some of the magazines contain textual material setting forth arguments against censorship, suggestions of photographic techniques, and arguments in favor of nudism. But none of this innocuous prose bears any relationship to the photographs, publication of which is obviously the central reason for the magazines' existence.
The question of the constitutional status of these publications under the first amendment is foreclosed by the Supreme Court's summary reversal of an obscenity conviction involving the same kind of material. (Central Magazine Sales, Ltd. v. United States (1967), 389 U.S. 50, 19 L.Ed.2d 49, 88 S.Ct. 235, rev'g per curiam 373 F.2d 633 *581 (4th cir. 1967), 253 F. Supp. 485 (D. Md. 1966). The United States Court of Appeals for the Fourth Circuit described one of the magazines involved in that case as "a collection of photographs of young women. In most of them, long stockings and garter belts are employed to frame the pubic area and to focus attention upon it. A suggestion of masochism is sought by the use in many of the pictures of chains binding the model's wrists and ankles. Some of the seated models, squarely facing the camera, have their knees and legs widespread in order to reveal the genital area in its entirety. In one of the pictures, all of these things are combined: The model, clad only in a framing black garter belt and black stockings is chained to a chair upon which she is seated, facing the camera, with one knee elevated and both spread wide." (373 F.2d at 634.) The only authority cited by the Supreme Court for its reversal of the Court of Appeals decision was Redrup v. New York (1967), 386 U.S. 767, 18 L.Ed.2d 515, 87 S.Ct. 1414 (per curiam), a case which held that whatever test of obscenity is applied, the magazines there involved were entitled to constitutional protection. We must conclude that the Supreme Court evaluated the material involved in the Central Magazine Sales Ltd. case under all of the various tests of obscenity that have been advanced and determined that such material is not obscene. Accordingly, we must reverse the convictions as to the 14 magazines in the third category of publications.
With reference to the fourth category of publication, the magazine "Mixmates", we are asked "to consider that there is no depiction of sex relations in the pictures in `Mixmates', and that therefore the magazine is absent the quality that might be characterized `hard core pornography', if indeed it can be characterized as pornography at all." We cannot agree. "Mixmates" is a sado-masochistic magazine which contains photographs portraying lesbianism, rape, whippings, beatings, bondage, axing, and other abnormal sexual conduct. The pictures, almost without exception, *582 depict scenes of excessive violence and brutality. Nearly naked women are shown being whipped, chained, tortured, and otherwise abused. In some pictures, a substance which appears to be blood is smeared on the bodies of the female models, and in other pictures the models appear to be screaming. We have been unable to find any reported decisions in this court or in the Supreme Court which have dealt with material as extreme. In Mishkin v. New York (1966), 383 U.S. 502, 16 L.Ed.2d 56, 86 S.Ct. 958, the court affirmed an obscenity conviction involving sado-masochistic books, although in that case there was evidence of "pandering", absent here. (See Ginzburg v. United States (1966), 383 U.S. 463, 16 L.Ed.2d 31, 86 S.Ct. 942.) In a subsequent series of per curiam opinions citing Redrup v. New York (1967), 386 U.S. 767, 18 L.Ed.2d 515, 87 S.Ct. 1414 (per curiam), as authority, the court reversed obscenity convictions involving sado-masochistic publications similar to those in the Mishkin case. (Avansino v. New York (1967), 388 U.S. 446, 18 L.Ed.2d 1308, 87 S.Ct. 2093 (per curiam); Sheperd v. New York (1967), 388 U.S. 444, 18 L.Ed.2d 1306, 87 S.Ct. 2093 (per curiam); Friedman v. New York (1967), 388 U.S. 441, 18 L.Ed.2d 1303, 87 S.Ct. 2091 (per curiam).) However those cases may be interpreted, we hold that the dominant theme of "Mixmates" taken as a whole appeals to a prurient interest in sex, that it is patently offensive because it affronts contemporary community standards in the description of sexual matters, and that it contains not the slightest modicum of redeeming social value.
Finally, we think that the pulp-paperback novel, "Love Together", by Jack Olley, is obscene. The book is no more than a chronicle of a series of sexual encounters between and among its main characters. The author's accounts of normal and abnormal sexual conduct, including sodomy, flagellation, masturbation, oral-genital contact, anal intercourse, lesbianism, and sadism and masochism, are vivid, *583 intimately detailed, and explicit. (Cf. One, Inc. v. Olesen (1958), 355 U.S. 371, 2 L.Ed.2d 352, 78 S.Ct. 364, rev'g per curiam 241 F.2d 772 (9th cir. 1957); Grove Press, Inc. v. Gerstein (1964), 378 U.S. 577, 12 L.Ed.2d 1035, 84 S.Ct. 1909, rev'g per curiam 156 So.2d 537 (Dist. Ct. App. Fla. 1963); Tralins v. Gerstein (1964), 378 U.S. 576, 12 L.Ed.2d 1033, 84 S.Ct. 1903, rev'g per curiam 151 So.2d 19 (Dist. Ct. App. Fla. 1963); Mazes v. Ohio (1967), 388 U.S. 453, 18 L.Ed.2d 1315, 87 S.Ct. 2105, rev'g per curiam 3 Ohio App.2d 90, 209 N.E.2d 496 (1965), 7 Ohio St.2d 136, 218 N.E.2d 725 (1966); Aday v. United States (1967), 388 U.S. 447, 18 L.Ed.2d 1309, 87 S.Ct. 2095, rev'g per curiam 357 F.2d 855 (6th cir. 1966); Books, Inc. v. United States (1967), 388 U.S. 449, 18 L.Ed.2d 1311, 87 S.Ct. 2098, rev'g per curiam 358 F.2d 935 (1st cir. 1966); Quantity of Books v. Kansas (1967), 388 U.S. 452, 18 L.Ed.2d 1314, 87 S.Ct. 2104, rev'g per curiam 197 Kan. 306, 416 P.2d 703 (1966); Keney v. New York (1967), 388 U.S. 440, 18 L.Ed.2d 1302, 87 S.Ct. 2091 (per curiam); Corinth Publications, Inc. v. Wesberry (1967), 388 U.S. 448, 18 L.Ed.2d 1310, 87 S.Ct. 2096, rev'g per curiam 221 Ga. 704, 146 S.E.2d 764 (1966); Hoyt v. Minnesota (1970), 399 U.S. 524, 26 L.Ed.2d 782, 90 S.Ct. 2241, rev'g per curiam 174 N.W.2d 700 (Minn. Sup. Ct. 1970).) Moreover, unlike the book involved in the "Fanny Hill" case (Memoirs v. Attorney General of Massachusetts (1966), 383 U.S. 413, 16 L.Ed.2d 1, 86 S.Ct. 975), no evidence was offered of any literary or artistic merit, and we are able to discover none. There is a 10-page introduction by a Leonard A. Lowag, Ph.D., who purports to place the contents of the book into some psychological perspective, but we cannot agree with the defendants that because of this "the book possesses social importance and is therefore constitutionally protected." While it is true that the book must be judged as a whole and that "the social value of the book can neither *584 be weighed against nor canceled by its prurient appeal or patent offensiveness," (Memoirs v. Attorney General of Massachusetts (1966), 383 U.S. 413, 419, 16 L.Ed.2d 1, 86 S.Ct. 975), otherwise obscene material cannot be justified on the basis of the kind of hollow subterfuge employed here.
What we said of the books in People v. Sikora (1965), 32 Ill.2d 260, 268-9, applies equally here: "The sole appeal of these books is to the prurient interest, and the stimulation of that interest is clearly the author's intention. The aberrational conduct portrayed can appeal only to a shameful and morbid interest in nudity and sex. The kind of scenes that are described and the detail of description go beyond the customary limits of candor in this country. The defendant does not contend that any of these books has literary or artistic merit. No one of them can be said to represent a serious attempt to discuss any problem that confronts society. They are discussions of sex and perversion, almost totally unrelated to anything else. Such plot and characterization as they contain serve as transitions from one sexual episode, normal or abnormal, to another. It is not enough, in our opinion, to say that they are escapistic, and so serve a social function. Without their obscenity they would interest no one and would perform no function. All obscenity is essentially escapistic; it can not be allowed to justify itself on that basis."
The convictions of William Stolfa, for exhibiting and selling the book "Love Together," and of John Geraci, for exhibiting and selling the magazine "Mixmates", are affirmed. The convictions of Walter Bagnell, Charles Kimmel, Joseph Gale, Vincent Geraci, James Krueger, and John Geraci, for exhibiting and selling the other publications, are reversed.
Affirmed in part, and reversed in part.