THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT PENNEY, Defendant-Appellant.

(No. 56540; )

First District—August 17, 1972.

Howard T. Savage, of Chicago, for appellant.

William J. Scott, Attorney General, of Springfield, and Edward V. Hanrahan, State's Attorney, of Chicago, (James B. Zagel, Assistant At-

torney General, and Robert A. Novelle and Themis N. Karnezis, Assistant State's Attorneys, of counsel,) for the People.

Mr. PRESIDING JUSTICE McGLOON delivered the opinion of the court:

The defendant was charged in a complaint with the offense of obscenity in violation of Ill. Rev. Stat. 1969, ch. 38, par. 11—20. After a bench trial, defendant was found guilty and fined $500 plus costs. He appeals. We affirm.

The relevant facts are as follows: On November 14, 1969, a Maywood police sergeant purchased two magazines, to wit: one copy of *Adult Words and Pictures* and one copy of *Bottom* from the defendant's store in Maywood, Illinois. On November 17, 1969, the same police officer appeared before his Honor Judge Delaney who, after examining the magazines, signed a search warrant for defendant's store and a complaint and arrest warrant against the defendant. The defendant was subsequently arrested and released on bail.

On March 20, 1970, there was a hearing on defendant's motion to suppress the magazines as evidence. At the hearing the trial court quashed the search warrant but denied defendant's motion to dismiss the complaint. Prior to trial there was a stipulation between opposing parties as to the facts. The stipulation set out the facts essentially as they are set out above with the additional note that the police sergeant who purchased the magazines had merely picked them off a rack in a public area of the store, took them to the counter where he paid for them and received a requested receipt. As already noted, the trial resulted in defendant's conviction and fine.

On appeal the first issue raised by defendant is that his arrest and subsequent criminal conviction under the Illinois Obscenity Statute constituted an unconstitutional abridgement of his right to freedom of speech and press as guaranteed him under the First and Fourteenth Amendments of the United States Constitution. This is so, urges defendant, because he was not afforded, before arrest, a prior adversary hearing to determine whether or not the magazines were obscene. Without such a hearing defendant argues that, as a commercial book dealer, he is placed in a position of disseminating expression at the risk of fine and imprisonment should State authorities subsequently determine that what he has disseminated is obscene and without constitutional protection. The necessary result is a prior restraint upon freedom of speech and press. Defendant cites three recent Federal cases in support of his position: *Cambist Films v. Illinois* (1968), 292 F.Supp. 185; *Delta Book*

*Distributors v. Cronvich* (1969), 304 F.Supp. 662; *Poulos v. Rucker* (1968), 288 F.Supp. 305.

■■ The "prior restraint" argument urged on this Court by the defendant has been successfully made on many prior occasions. However, the fact situations in these cases, as exemplified by the cases cited by plaintiff, have usually involved seizures of films or of the total or greater part of a particular supply of magazines or books. Under the facts of the instant case, we think the recent holding of our Supreme Court in the consolidated cases of *People v. Ridens* and *City of Moline v. Walker* (1972), 51 Ill.2d 410, necessitates the rejection of plaintiff's argument on this issue. In the *Ridens* and *Walker* cases the complaints against the defendants were based on the purchase of the offending magazines by police officers. At their bench trials, defendants made motions to dismiss on the grounds that they were not afforded prior adversary hearings. The motions were denied, and defendants in both cases were found guilty. On appeal our Supreme Court said at page 416:

"Finally, the defendants claim that they were entitled to an adversary hearing on the question of whether, in fact, the offending publications were obscene, prior to the issuance of the warrants for their arrest. In support of this contention they cite numerous decisions which involved the seizure of books, magazines and films pursuant to the issuance of search warrants. In particular, the defendants cite *People v. Kimmel*, 34 Ill.2d 578, in which a conviction was reversed for just such a seizure.

We find the rationale of these cases inapplicable to the circumstances of the cases at bar. The cited cases involve the constitutional issue of prior restraint of the publications under the first amendment to the United States constitution. In the cases before us, no search warrants were issued, there was no seizure of all of the copies of the magazines in question, the arrests were made after sales of the magazines to the police officers, not before, and the defendants' businesses were not interrupted. We find, therefore, that the defendants were not entitled to an adversary hearing on the question of obscenity prior to their arrest."

See also *Weintraub & Nawadylo v. Scott* (N.D. Ill., 1971), No. 70 C 1235. On the basis of the above quoted language, we conclude that the instant defendant was not entitled to a prior adversary hearing on the issue of obscenity.

The second issue raised by defendant is that the magazines are nonobscene as a matter of constitutional law, or in the alternative that obscenity *vel non* is protected by the guarantees of the First and Fourteenth

Amendments. Defendant argues that the application of the standards for obscenity as set out in Supreme Court cases, particularly the case of *Redrup v. New York,* would necessitate our holding the instant magazines non-obscene. Therefore, defendant argues that interference with their provision or sale is protected by the free speech provisions of the First Amendment and the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

In *Roth v. United States* (1957), 354 U.S. 476, the Supreme Court held that obscenity as such was outside the protection of the First Amendment. The definition for obscenity set out in *Roth* and elaborated in the later cases of *Manual Enterprises v. Day* (1962), 370 U.S. 478, and *Jacobellis v. Ohio* (1964), 378 U.S. 184, has been repeated many times: "We defined obscenity in *Roth* in the following terms: '[W]hether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest.' 354 U.S. at 489. Under this definition, as elaborated in subsequent cases, three elements must coalesce: it must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value." *A Book v. Attorney General* (1966), 383 U.S. 413, 418.

At page 419 this latter opinion further notes: "Each of the three Federal constitutional criteria is to be applied independently; the social value of the book can neither be weighed against nor canceled by its prurient appeal or patent offensiveness." 383 U.S. at 419.

Our Illinois statute has incorporated the *Roth* standards for obscenity. Ill. Rev. Stat. 1969, ch. 38, par. 11—20(b), provides:

"(b) Obscene Defined.

A thing is obscene if, considered as a whole, its predominant appeal is to prurient interest, that is, a shameful or morbid interest in nudity, sex or excretion, and if it goes substantially beyond customary limits of candor in description or representation of such matters. A thing is obscene even though the obscenity is latent, as in the case of undeveloped photographs.

See *City of Chicago v. Kimmel* (1964), 31 Ill.2d 202, 201 N.E.2d 386."

Defendant argues that the *Roth* case, *supra,* has been modified by the decision in *Redrup v. New York* (1967), 386 U.S. 767. In the *Redrup* case the Supreme Court did appear to modify *Roth* by enunciating three additional criteria to be assessed in addition to those set out in *Roth.* In *Redrup* the Court was considering the validity of two criminal convic-

tions for obscenity and a declaratory judgment of obscenity and associated injunction. The criminal convictions were under a municipal statute in New York City and a Kentucky State statute. The declaratory judgment was rendered under an Arkansas State statute. The Supreme Court said at page 769:

"In none of the cases was there a claim that the statute in question reflected a specific and limited state concern for juveniles. See *Prince v. Massachusetts,* 321 U.S. 158; cf. *Butler v. Michigan,* 352 U.S. 380. In none was there any suggestion of any assault upon individual privacy by publication in a manner so obtrusive as to make it impossible for an unwilling individual to avoid exposure to it. Cf. *Breard v. Alexandria,* 341 U.S. 622; *Public Utilities Comm'n v. Pollak,* 343 U.S. 451. And in none was there evidence of the sort of "pandering" which the Court found significant in *Ginzburg v. United States,* 383 U.S. 463." 386 U.S. at 769.

The Court concluded that regardless of which member of the Court's definition of obscenity was used, these convictions could not stand.

The notion that the presence of one or more of the additional criteria enunciated in *Redrup, supra,* would henceforth have to be present before a constitutional determination of obscenity could be made lasted only until the case of *United States v. Reidel* (1971), 402 U.S. 351. In *Reidel,* which was handed down subsequent to the filing of the briefs in the instant case, the Court emphatically reestablished that the *Roth* standards for obscenity were still the governing law in the area of obscenity, apparently unmodified by criteria suggested in *Redrup.* At page 354 the Court in *Reidel* said:

"*Roth* has not been overruled. It remains the law in this Court and governs this case. Reidel, like Roth, was charged with using the mails for the distribution of obscene material. His conviction, if it occurs and the materials are found in fact to be obscene, would be no more vulnerable than was Roth's." 402 U.S. at 354.

The Illinois Supreme Court expressly adopted this interpretation as to the effect of the *Reidel* case in *City of Moline v. Walker* (1971), 49 Ill.2d 392, 274 N.E.2d 9. At page 396 our Supreme Court speaking of *Reidel* said:

"The majority of the court in *Reidel* noted that changes in the law's involvement with obscenity where children are involved or where it is necessary to prevent imposition on unwilling recipients of whatever age 'lies with those who pass, repeal, and amend statutes and ordinances.' (28 L.Ed.2d at 818.) This language, in effect, overruled *Redrup* and leaves *Roth* intact without the *Redrup* restrictions." 49 Ill.2d at 396.

196

■■ Thus, we conclude that our determination as to whether or not the instant magazines are obscene must be made in accordance with the standards set out in *Roth, supra,* and elaborated in later cases as mentioned. In making this determination, we are required to make an independent constitutional judgment. *Jacobellis, supra; City of Chicago v. Kimmel* (1964), 31 Ill.2d 202, 201 N.E.2d 386.

The two magazines in the instant case are entitled *Bottom* Vol. No. 1, and *Adult Words and Pictures. Bottom* is a magazine consisting primarily of photographs of naked and nearly naked women in a variety of postures. Many of the models appear in a reclining position on a bed or sofa, and all the pictures are posed seductively with the models' legs spread apart in such a way that their genitals are not only clearly revealed but are made the focal point of the photograph. In many of the pictures, long stockings and garter belts are employed to frame the pubic area and focus attention upon it. While no explicit sexual activity is actually discernible, many of the pictures suggest lesbian sexual activity or portray such acts as imminent. In these instances the models are photographed while lying on top of or straddling each other or are portrayed with their hands or mouths close to another's genitals.

The magazine *Bottom* also contains certain textual matter consisting of two articles entitled "The Bikini Story" and "The Changing Bottom Look." The former purports to relate the story of the bikini bathing suit, from its alleged "invention" by an American photographer in 1943 to present. It describes how the bikini has become a scantier and more body revealing garment, largely through the efforts of French women. "The Changing Bottom Look" purports to trace the history of pantwear and underwear for women. In addition to the abovementioned textual material, there are two so called feature articles. One is entitled "Bottoms Up" and is a series of short vignettes covering a variety of subjects. The other article is an alleged book excerpt entitled "Teen Orgies" describing the sexual adventures of an 18-year-old female hitchhiker in Los Angeles, California. The story is replete with descriptions of intercourse, cunnilingus, fellatio, lesbianism, voyeurism, homosexual acts and other abnormal sexual conduct.

The magazine *Adult Words and Pictures* also consists primarily of pictures of male and female models. As with the previous magazine, the models are posed in most instances so that the genital area is the focus of attention. Although no explicit sexual activity is portrayed, many of the photos suggest the imminency of such acts wherein the models are shown fondling each other or are portrayed with their hands or mouths near another's genitals.

*Adult Words and Pictures* also contains textual material. This material

consists of five articles entitled "The Nothing Things," "Dead Man Stud," "Teen Orgies," "The Fastest Whore in the West," and "Black Incest." "The Nothing Things," an alleged book excerpt, describes the adventures of a new pledge in a college sorority. It describes her submitting to and performing various lesbian acts. "Dead Man Stud" describes the story of a male prostitute who abandons his profession after one of his customers is killed by her husband. The story describes their sexual intercourse in vivid detail. "Teen Orgies," another alleged book excerpt, describes the sexual adventures of a female high school student who attends a sex orgy. The story is replete with accounts of intercourse, rape, cunnilingus, voyeurism, fellatio, lesbianism and other abnormal sexual acts. "The Fastest Whore in the West" describes the seduction of a young cowboy in four-letter detail. "Black Incest" describes the lesbian relationship between two black sisters and is replete with descriptions of tribadism and other lesbian acts.

■■ Based upon our statutory definition of obscenity as implemented by the constitutional criteria, both of which we have previously set out, it is our conclusion that the magazines described herein are obscene and without constitutional protection. We think their sole appeal is to the prurient interests. We think they are without any artistic or literary merit and totally devoid of any redeeming social value.

In the consolidated cases of *People v. Ridens* and *City of Moline v. Walker, supra,* our Supreme Court relying on the statutory definition in issue here and the standards set out in *Roth, supra,* held the magazines in the *Ridens* case obscene. The Court described the magazines in a manner which would make them virtually identical with those before us, at least as far as the photographs are concerned. We hasten to note that it is obvious that the photographs are the central reason for the existence of the instant magazines. After describing the magazines the Court in *Ridens* said:

"We find that the sole appeal of these magazines is to the prurient interests; the dominant theme of these publications is to a morbid interest in nudity and sex. The scenes shown and the detail in the photographs are patently offensive in that such depiction goes beyond the customary limits of candor in this state. No one of these magazines has any literary or artistic merit and they are utterly without redeeming social value. They are all obscene." 51 Ill.2d at 417.

We would apply the above language verbatim to the case at bar.

The defendant urges, however, that the textual material in the instant magazines bestows some "redeeming social value" upon them. We do not agree.

In *People v. DeVilbiss* (1969), 41 Ill.2d 135, 242 N.E.2d 761, the Su-

preme Court upheld the obscenity conviction of a bookstore owner under the Blue Island obscenity ordinance. That ordinance was identical to our state statute involved herein. The Court described the textual material of the four books involved in terms which, if accurate, would make their content essentially identical to ours as to the sexual activities portrayed. The Court, relying on *Roth, supra,* said at page 142:

"In common with the books we reviewed and found obscene in *People v. Sikora,* 32 Ill.2d 260, 268. 'No one of them can be said to represent a serious attempt to discuss any problem that confronts society. They are discussions of sex and perversion, almost totally unrelated to anything else. Such plot and characterization as they contain serve as transitions from one sexual episode, normal, or abnormal, to another.' The books are replete with accounts of homosexual acts, masturbation, flagellation, oral-genital acts, rape, voyeurism, masochism and sadism. These accounts can only appeal to the prurient interest, and clearly go beyond customary limits of candor in the kinds of conduct described and in the detail of description." 41 Ill.2d at 142.

We think that the above language is applicable to the instant case. Nor does the presence of the few innocuous articles we described change our opinion.

■■ We must note, however, that the textual material in the magazine *Bottom,* specifically the articles on "The Changing Bottom Look" and "The Bikini Story," gave us cause for concern as to whether the independent application of each of the *Roth* criteria would allow for our holding the magazine to be not obscene. After due deliberation, we think they do not. We note again that the photographs portrayed were obviously the central reason for the magazine being published. Our thinking on the innocuous textual material can be summed up by looking to the opinion of our Supreme Court in *City of Chicago v. Geraci* (1970), 46 Ill.2d 576, 264 N.E.2d 153, wherein the Court in discussing the issue of obscenity of a pulp-paperback novel said at page 583:

"There is a 10 page introduction by a Leonard A. Lowag, Ph.D., who purports to place the contents of the book into some psychological perspective, but we cannot agree with the defendants that because of this 'the book possesses social importance and is therefore constitutionally protected.' While it is true that the book must be judged as a whole and that 'the social value of the book can neither be weighed against nor canceled by its prurient appeal or patent offensiveness,' (*Memoirs v. Attorney General of Massachusetts* (1966), 383 U.S. 413, 419, 16 L.Ed.2d 1, 86 S.Ct. 975), otherwise obscene material cannot be justified on the basis of the kind of hollow subterfuge employed here."

■■ Finally, we think that defendant's argument that under recent holdings of the United States Supreme Court the *Roth* decision has been modified to the extent that obscenity *vel non* is now constitutionally protected is without merit. Defendant relies, in this position, primarily on the case of *Redrup v. New York, supra,* and *Stanley v. Georgia* (1969), 394 U.S. 557. We previously noted that in the recent case of *United States v. Reidel, supra,* the Supreme Court reaffirmed the *Roth* case as the governing law in obscenity cases. As we also noted, the Illinois Supreme Court in *Ridens* and *Walker, supra,* interpreted *Reidel* as overruling the *Redrup* case insofar as it modified the *Roth* standard for obscenity in any way. The *Roth* case clearly said that obscenity without more is without constitutional protection, and thus defendant's argument to the contrary otherwise must fail.

In accord with the above discussion, we affirm the defendant's conviction for obscenity.

Judgment affirmed.

DEMPSEY and McNAMARA, JJ., concur.