MARTHA CIAMPA, Plaintiff-Appellant, v. THE CITY OF CHICAGO et al., Defendants-Appellees.

(No. 56441;

First District (1st Division)—May 29, 1973.

*Rehearing denied July 24, 1973.*

Paul C. Ross and Morton J. Rubin, both of Chicago, for appellant.

Richard L. Curry, Corporation Counsel, of Chicago, (William R. Quinlan and Thomas J. Cachor, Assistant Corporation Counsel, of counsel,) for appellees.

Mr. PRESIDING JUSTICE BURKE delivered the opinion of the court:

Plaintiff, Martha Ciampa, was the holder of a Food Purveyor License No. 1386 issued by the City of Chicago. After notice and hearings, the plaintiff's license was revoked by the Mayor of the City of Chicago.

Plaintiff subsequently filed a petition for a writ of mandamus in the circuit court of Cook County seeking to compel the Mayor to reinstate her Food Purveyor License. After having heard the testimony of the witnesses and having examined the evidence, the trial court denied plaintiff's petition. Plaintiff appeals.

On June 9, 1970, Officer James McGuinness of the Chicago Police Department purchased the magazine entitled "Sybil No. 1" from plaintiff for $3.50. The sale took place at plaintiff's store at 1908 West Belmont Avenue, Chicago, the front portion of which was utilized by her as a food store where she sold ice cream, milk, cookies, candy, and school supplies. In the rear portion of the store plaintiff sold books and magazines. The Officer testified that he entered the store and proceeded to the rear where plaintiff had a book rack. He stated that he browsed through the rack and picked up the magazine "Sybil No. 1" which he purchased from plaintiff.

On June 10, 1970, Officer McGuinness appeared before Judge Robert J. Collins of the circuit court of Cook County and verified a complaint charging the plaintiff with a violation of Ill. Rev. Stat. 1969, ch. 38, par. 11—20 and the Judge issued a warrant for plaintiff's arrest.

On July 1, 1970, a hearing on the criminal complaint was conducted before Judge Jack A. Welfeld of the circuit court of Cook County. At this hearing, plaintiff entered a plea of not guilty. The Court, without making a finding as to whether or not the magazine "Sybil No. 1" was obscene, sentenced the plaintiff to six months supervision and released plaintiff's bond.

Subsequently on August 20, 1970, a notice to revoke plaintiff's Food Purveyor License was issued by the Mayor of the City of Chicago based upon the charge that the plaintiff had been "dispensing obscene literature contrary to the Ordinances of the City of Chicago and the Statutes of the State of Illinois." The specific violations with which plaintiff was charged are embodied in Section 192.9 of the Municipal Code of Chicago and Ill. Rev. Stat. 1969, ch. 38, par. 11—20 (a) (1) which provide respectively:

Section 192.9 of the Municipal Code of Chicago:

"It shall be unlawful for any person knowingly to exhibit, sell, print, offer to sell, give away, circulate, publish, distribute, or attempt to distribute any obscene book, magazine, pamphlet, paper, writing, card, advertisement, circular, print, picture, photograph, motion picture film, play, image, instrument, statue, drawing, or other article which is obscene. Any person violating any provisions of this section shall be fined not less than $20.00 nor more than $200.00 for each offense.

Obscene for the purpose of this section is defined as follows: Whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interests."

Ill. Rev. Stat. 1969, ch. 38, par. 11—20(a)(1)

"A person commits obscenity when, with knowledge of the nature or content thereof, or recklessly failing to exercise reasonable inspection which would have disclosed the nature or content thereof, he:

(1) Sells, delivers or provides, or offers or agrees to sell, deliver or provide any obscene writing, picture, record or other representation or embodiment of the obscene."

On September 21, 1970 and September 28, 1970, hearings were conducted before the Commissioner designated by the Mayor. The Commissioner found that the magazine "Sybil No. 1" was obscene and on October 2, 1970, plaintiff's Food Purveyor License was revoked by the Mayor, pursuant to the authority conferred upon him by the Municipal Code of Chicago, Sec. 101-27 which provides in relevant part:

"The Mayor shall have power to revoke any license issued under the provisions of this code for good and sufficient cause.

If at any time after the granting of any license, any license shall have violated any of the provisions of this code or any of the statutes of the state in the conduct of his business, the mayor may revoke the license therefor."

Plaintiff argues that before the Mayor can revoke a license, there

must be a prior judicial determination for the purpose of determining whether a publication is constitutionally protected or obscene. Plaintiff also maintains that since Judge Welfeld did not make an express finding in the prior criminal proceedings that the magazine "Sybil No. 1" was obscene and sentenced plaintiff to six months supervision and released her bond, this action was tantamount to a finding of not guilty and should have been considered *res judicata* in the subsequent hearing conducted by the Mayor.

■■ We are of the opinion that it is not necessary for us to reach a decision as to whether Judge Welfeld's actions in the criminal proceedings constituted, as plaintiff maintains, a "finding of not guilty." The outcome of the prior criminal proceedings would in any event be immaterial in the subsequent proceedings instituted by the Mayor to revoke plaintiff's Food Purveyor License. (See *Nechi v. Daley*, 40 Ill.App.2d 326, 188 N.E.2d 243; *Taylor v. Civil Service Com.*, 33 Ill.App.2d 48, 178 N.E.2d 200.) The doctrine of *res judicata* is inapplicable in this case for the principal reason that the burden of proof in the criminal proceeding is different from the burden of proof in the license revocation proceeding.

We believe the following pronouncement by the Pennsylvania Supreme Court in *Commonwealth v. Funk*, 323 Pa. 390, 400, 186 A.65, 70, is appropriate:

> "It has been the established rule that a criminal prosecution does not bar a subsequent civil or administrative proceeding based upon the same set of facts, nor does a judgment rendered therein have any probative value in subsequent proceedings beyond the mere fact of its rendition: *Wilson v. Wilson*, 100 Pa. Superior Ct. 451. This results from the nature of criminal proceedings and the type of proof required therein. In criminal proceedings the guilt of the accused must be established beyond a reasonable doubt. In a civil proceeding to revoke a license it is sufficient if the offense be established by a preponderance of the evidence; this distinction is pointed out by Mr. Justice Sadler in *Barach's Case*, 279 Pa. 89; see also *Summers v. Brewing Co.*, 143 Pa. 114; *Morch v. Raubitschek*, 159 Pa. 559."

In *People ex rel. Anderson v. City of Chicago*, 312 Ill.App. 187, 37 N.E.2d 929 (Abstract), this court was concerned with a case in which the plaintiff's prior license for the year 1940 had been revoked by the Mayor pursuant to Section 101-27 of the Municipal Code. Plaintiff had instituted a mandamus proceeding to compel the restoration of the license but before the hearings were concluded in that proceeding the 1940 license period had expired and the cause was dismissed. When

the plaintiff applied for a license in 1941, his application was not approved. He then instituted another mandamus proceeding seeking to compel the Mayor to issue him a license for the year 1941 and this petition for a writ of mandamus was granted by the trial court.

This court, in reversing the judgment, stated:

> "It is a well recognized principle of law that there is vested in the licensing authority a discretionary power which may be reasonably exercised in the granting or refusing to issue a license. Even when the applicant for a license has complied with all of the requirements governing the issuance of such license, nevertheless a discretion exists in the licensing officer and he will not be compelled to issue a license when in his discretion, reasonably and fairly exercised, the license has been refused. (*Harrison v. The People*, 222 Ill. 150; *People v. Dever*, 236 Ill.App. 135.) The fact that plaintiff and his employees were discharged in the Municipal court when they were tried on charges brought against them as the result of the investigation made by the Police Department did not militate against the Mayor's use of his discretionary power to refuse to grant a license to Carlson. The judgment in the criminal proceeding did not preclude the Mayor from exercising his discretionary power in the matter of refusing to grant Carlson a license for the year 1941. (*People v. Ludwig*, 258 Ill.App. 268; *State v. Lewis*, 164 Wis. 363.)"

■■ Plaintiff's authorities stand for the general proposition that prior restraints on freedom of expression, such as mass seizure of books or impounding of films, are illegal unless a prior adversary hearing is provided. The defendants do not take exception to this general proposition. The action of the Mayor in the present case, however, was not one of seizure or suppression of the publications, but rather one of revoking a license for cause. We are of the opinion that there is no requirement shown under the law which would necessitate the Mayor having a prior judicial determination before he can revoke a Food Purveyor License for a violation involving the sale of obscene material.

Plaintiff argues that the magazine "Sybil No. 1" is not obscene and therefore is constitutionally protected.

This court stated recently in *People v. Penney*, 7 Ill.App. 3d 191, 194, 287 N.E.2d 220, 223:

> "In *Roth v. United States* (1957), 354 U.S. 476, the Supreme Court held that obscenity as such was outside the protection of the First Amendment. The definition for obscenity set out in *Roth* and elaborated in the later cases of *Manual Enterprises v. Day* (1962), 370 U.S. 478, and *Jacobellis v. Ohio* (1964), 378

U.S. 184, has been repeated many times: 'We defined obscenity in *Roth* in the following terms: "[W]hether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest." 354 U.S. at 489. Under this definition, as elaborated in subsequent cases, three elements must coalesce: it must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value.' *A Book v. Attorney General* (1966), 383 U.S. 413, 418."

■■ Our determination as to whether or not the magazine "Sybil No. 1" is obscene must be made in accordance with the standards delineated by the Supreme Court in *Roth v. United States*, 354 U.S. 476, and elaborated in the later cases of *Manual Enterprises v. Day*, 370 U.S. 478, and *Jacobellis v. Ohio*, 378 U.S. 184. In making the determination, this court is required to make an independent constitutional judgment. *Jacobellis v. Ohio*, 378 U.S. 184; *City of Chicago v. Kimmel*, 31 Ill. 2d 202, 201 N.E.2d 386.

The magazine "Sybil No. 1" is a magazine composed predominantly of photographs portraying nude males and females, engaged in seductive embraces, and posed with their legs spread so as to focus attention on their genitals. Although the models portrayed do not appear to be actually engaged in sexual activity, it is manifestly clear and explicit from some of the photographs that sexual activity is suggested and imminent. In several of the pictures, long stockings and garter belts are used to frame the female genitals and focus attention upon them. The models in many of the pictures have their hands, or mouths, in close proximity to another's genitals, suggestive of abnormal sexual conduct. Some of the male models are posed with their heads close to the female sex organ, and vice versa. The magazine also contains sadomasochistic pictures portraying female models engaged in whippings and bondage.

■■ We are of the opinion that the dominant theme of "Sybil No. 1" taken as a whole appeals to a prurient interest in sex and that it is patently offensive because it affronts contemporary community standards in the description of sexual matters. We are also of the opinion that this magazine is utterly without redeeming social value notwithstanding the fact it contains a limited amount of innocuous textual material. See *City of Chicago v. Geraci*, 46 Ill.2d 576, 583, 264 N.E.2d 153, 157-58; *People v. Penney*, 7 Ill.App.3d 191, 198, 287 N.E.2d 220, 226.

Plaintiff argues that the Mayor of the City of Chicago abused his

discretion and acted arbitrarily when he made a finding that the magazine "Sybil No. 1" was obscene.

From the record it appears that after the notice of revocation was issued, plaintiff was afforded a hearing. Upon the conclusion of the hearing, the Commissioner made a finding that the magazine was obscene and the Mayor subsequently revoked plaintiff's Food Purveyor License. It is significant to note that the trial judge who heard the plaintiff's petition for a writ of mandamus was of the opinion that the magazine "Sybil No. 1" was obscene and as previously stated, this Court, after having made an independent constitutional judgment, is also of the opinion that the magazine is obscene.

When considered in this perspective, the Mayor's finding that the magazine "Sybil No. 1" was obscene is amply supported and there is nothing in the record to support the allegation that the Mayor acted arbitrarily or abused his discretion.

For these reasons, the judgment is affirmed.

Judgment affirmed.

GOLDBERG and McGLOON, JJ., concur.