THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MILTON GLASS *et al.*, Defendants-Appellants.

First District (1st Division)    No. 61774

Opinion filed July 26, 1976.—Rehearing denied September 7, 1976.

44

Paul C. Ross, of Chicago (John F. Martoccio, of counsel), for appellants.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Mary Ellen Dienes, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE BURKE delivered the opinion of the court:

Five cases charging the defendants with violating the Illinois obscenity statute (Ill. Rev. Stat. 1973, ch. 38, par. 11—20) were consolidated for appeal. In four of the five cases the defendants were charged with selling an obscene magazine with knowledge of the nature or content thereof. In the fifth case defendant James Grant was charged with selling an obscene magazine with knowledge of the nature and content thereof or recklessly failing to exercise reasonable inspection of such magazine where an inspection would have revealed its obscene nature and content. In a bench trial the court found each of the magazines to be obscene and found each of the defendants guilty of the crime of obscenity. Defendants Speer, Grant, Glass and Myers were fined $100 each and defendant Stove was fined $1,000. The defendants appeal contending that: (1) the State failed to prove beyond a reasonable doubt that the defendants had knowledge of the nature and content of the magazines; (2) the magazines are not obscene in the constitutional sense and therefore fall within the protection of the First Amendment; and (3) the complaint against James Grant is void because it uses the disjunctive "or" in charging Grant with

sale with knowledge of the magazine's contents or sale with reckless disregard of the magazine's contents, thereby creating uncertainty and conjecture as to which alternative Grant was accused of violating.

In the case of James Speer, Investigator George Carey of the Chicago Police Department's Vice Control Division testified that on August 21, 1974, he went to the Mart Adult Book Store at 78 West Van Buren in Chicago. He said "hello" to James Speer, a clerk at the checkout counter. He proceeded to a magazine rack, selected a magazine entitled "Playmate" No. 7, took it to the checkout counter and paid James Speer $3 for it. The officer opened the magazine to pages he marked "A" and "B" and showed it to Speer and asked if Speer would sell that magazine to a minor. Speer said "no." The magazine "Playmate" No. 7 consists of a pictorial story without narrative, of color photographs of a young woman and two young men engaging in a variety of sexual activities. The two pages the officer showed Speer contain a single color photo of the individuals in bed with the woman performing an act of fellatio (oral caressing of the male sex organ) on one of the males while the other male is masturbating the genitals of the woman. There is no written matter in the magazine and the rest of the pages are filled with photographs of acts of sexual intercourse, anal intercourse, fellatio and masturbation with the photographs focusing on the genitals of the participants. James Speer testified that he had been employed as a clerk at the adult bookstore for seven or eight months prior to the time he had sold investigator Carey the magazine. Speer denied having anything to do with the selection of the books or ever looking at them. He said he only read "hockey magazines." He stated that he knew the kind of store where he worked.

In James Grant's case, Nicholas Ahrens, a police officer with the Chicago Police Department, testified that on August 26, 1974, he went to the Van Buren Book Store at 72 West Van Buren Street. After browsing for several minutes he selected a magazine, "Sinsear," volume 1, No. 4, and took it to the checkout counter where James Grant was working as a clerk. He placed it on the counter so that it was facing Grant and paid Grant for the magazine. Ahrens then identified himself as a police officer and informed Grant of his purpose in the store. The officer opened the magazine to pages he marked "A" and "B", placed them in front of Grant and asked Grant if he would sell that magazine or one like it to a minor. Grant said "no." The magazine, "Sinsear," volume 1, No. 4, is primarily composed of photographs, with a scarcity of written material. The photographs all depict naked or almost entirely naked men and women engaging in actual or imminent sex acts including intercourse, cunnilingus (oral caressing of the female sex organ) and fellatio. The photographs focus throughout the magazine on the genitals of the participants. The marked pages which the officer showed James Grant contain photographs

of a nude woman about to perform an act of fellatio on a nude man and the man about to perform the act of cunnilingus upon the woman. James Grant testified that he had been a clerk for 13 years, but had nothing to do with the selection of books sold in the store. He testified that he did not know the nature of the magazine he sold to Officer Ahrens and never once looked at any of the magazines in the store.

In the case of Victoria Stove, Investigator George Carey testified that on May 1, 1974, he went to Victoria's Adult Book Store at 2914 West Irving Park in Chicago, Illinois. The investigator paid a $1 admission fee to a woman sitting at the counter he later identified as Victoria Stove, selected a magazine entitled "Climax" and took it to the counter. He laid the magazine down in front of defendant Stove and paid $5 for it. Carey then identified himself as a police officer and asked the defendant whether she would sell the magazine to a minor. She said she would not. Victoria Stove then told Carey that she was the owner of the store. When he told her he was going to take the magazine before a judge to obtain an arrest warrant, she stated to him that "this is pornography and once I'm arrested what's going to happen to me." The magazine, "Climax" is primarily composed of photographs of naked men and women engaging in intercourse, fellatio, cunnilingus, masturbation and a combination of these acts. In each photograph the focus is on the exposed genitals of the persons depicted. Some textual material appears on certain pages along with the photographs. Victoria Stove testified that she was the owner of the store but had nothing to do with the selection of the materials sold there because "a lot of the stuff was there already" and she "just * * * ordered more of the same stuff."

In the case of Milton Glass, the prosecution and defense stipulated that if Officer Peterson were called to testify he would testify that on July 18, 1974, he went to 119 West Van Buren in Chicago and purchased from Milton Glass a magazine entitled "Ankh" No. 21, "The Journal of the Senses," for $5. The magazine is primarily composed of photographs of men and women engaging in intercourse, masturbation, fellatio, cunnilingus, group sex acts and lesbian sex acts. Milton Glass testified that he was a clerk at the book store and had nothing to do with the selection or contents of the books.

In the case of James Myers we have not been provided with a transcript of his trial proceedings except for the determination that the magazine he sold was obscene and his hearing in aggravation and mitigation. The magazine he was charged with selling, "Nude Living," No. 66, "A Journal of Contemporary Sex Mores," primarily consists of photographs of naked men and women engaged in intercourse, fellatio, cunnilingus, masturbation, voyeurism and various lesbian acts.

■■ The defendants' first contention is that the State did not prove

beyond a reasonable doubt that the defendants had knowledge of the nature or contents of the magazines. In defendant James Myers' case the record does not contain a transcript or report of the proceedings of his trial except for the finding and sentencing. Where a party fails to bring the entire report of proceedings to the reviewing court it will be presumed that the trial court heard sufficient evidence to support its judgment (*People v. Nettles*, 32 Ill. App. 3d 1082, 338 N.E.2d 199), and a reviewing court cannot consider a question concerning the sufficiency of the evidence in absence of a complete record (*People v. Sheppard*, 415 Ill. 497, 114 N.E.2d 564; *People v. Johnson*, 15 Ill. 2d 244, 154 N.E.2d 274.) Therefore, we will not consider this contention as to defendant Myers.

As to the other four defendants, the contention is that their cases only contain evidence that the defendants sold certain magazines to the police officers and do not contain any evidence, direct or circumstantial, that the defendants had knowledge of the contents of these magazines. In the cases of Speer and Grant the officer in each instance opened the magazine to pages with photographs of explicit sex acts and showed these pages to the defendants who stated that they would not sell these magazines to minors. In Stove's case she was the owner of the store and admitted to the officer that "this is pornography." In the case of Milton Glass, however, the only evidence was that Glass had sold a copy of "Ankh" No. 21, "The Journal of the Senses" to Officer Peterson for $5. There was no direct evidence whether Glass had examined the contents of the magazine. However, in Glass' case, as in the other cases, in order for him to have made the sale it would be necessary to look at the cover of the magazine to determine the sale price. The cover of the magazine Glass sold contains several written labels or admonitions in large letters stating "ADULTS ONLY" and "SALE TO MINORS FORBIDDEN" along with the statement "This Guide Contains PHOTO ILLUSTRATED Educational Material Dealing With Sex." In the center of the cover is a large black and white photograph of a young male and female apparently naked (only parts of the upper portion of their bodies are shown), lying together in the grass. We are of the opinion that looking at this cover would put a reasonable person on notice as to the obscene nature or content of the magazine.

The Illinois obscenity statute makes it unlawful to sell obscene material "with knowledge of the nature or content" of that material. (Ill. Rev. Stat. 1973, ch. 38, par. 11—20.) The Criminal Code in defining the phrase "with knowledge of" states, "Knowledge of a material fact includes awareness of the substantial probability that such fact exists." (Ill. Rev. Stat. 1973, ch. 38, par. 4—5.) The court, which was sitting as the finder of fact, could have reasonably drawn the inference that Milton Glass, in selling the magazine, would have had to look at the cover of the magazine for the

sale price and in looking at the cover he would have become aware of the substantial probability that the magazine was of an obscene nature. We are of the opinion that there was sufficient evidence to support a finding that Milton Glass had knowledge of the nature or content of the magazine he sold to Officer Peterson.

The defendants have cited *Smith v. California*, 361 U.S. 147, 4 L. Ed. 2d 205, 80 S. Ct. 215. In *Smith* it was held that the State may not hold a person strictly liable for the sale of obscene material, but must show that the person had knowledge of the character or contents of the material. The court went on to say, however:

> "Eyewitness testimony of a bookseller's perusal of a book hardly need be a necessary element in proving his awareness of its contents. The circumstances may warrant the inference that he was aware of what a book contained, despite his denial.
>
> We need not and most definitely do not pass today on what sort of mental element is requisite to a constitutionally permissible prosecution of a bookseller for carrying an obscene book in stock; whether honest mistake as to whether its contents in fact constituted obscenity need be an excuse; whether there might be circumstances under which the State constitutionally might require that a bookseller investigate further, or might put on him the burden of explaining why he did not, and what such circumstances might be." 361 U.S. 147, 154, 4 L. Ed. 2d 205, 212, 80 S. Ct. 215, 219.

In a subsequent case, *Mishkin v. New York*, 383 U.S. 502, 16 L. Ed. 2d 56, 86 S. Ct. 958, the United States Supreme Court discussed the knowledge requirement in more detail. The New York obscenity statute had been construed to require a person to be "in some manner aware of the *character* of the material they attempt to distribute." (383 U.S. 502, 510, 16 L. Ed. 2d 56, 63, 86 S. Ct. 958, 964.) The Supreme Court found that this definition of the knowledge requirement adequately met any constitutional demands. The court then went on to determine that there was sufficient evidence in that case to conclude that the defendant was aware of the character of the material. Factors which the court utilized in its determination were the character of the material as highlighted by the titles and covers and the exorbitant prices marked on the books. Both factors are present in Milton Glass' case as they are in our other cases. There was no direct evidence in *Mishkin* that the defendant had examined the contents of any of the publications. In Illinois it has been held that direct evidence that a defendant has seen or read the obscene materials is not required by the statute or the Constitution. Being aware of the nature of the publication is sufficient. *People v. Sikora*, 32 Ill. 2d 260, 204 N.E.2d 768.

In a case with similar facts to the instant cases, *People v. DeVilbiss*, 41 Ill. 2d 135, 242 N.E.2d 761, the Illinois Supreme Court considered whether there was sufficient evidence to establish that the defendant had knowledge of the nature or content of the obscene materials. The court stated:

"The trial judge found that there was *scienter*, and in our judgment there is substantial evidence in the record to support this conclusion. It is not consequential that no direct evidence that the defendant read the books· was presented since 'Eyewitness testimony of a bookseller's perusal of a book hardly need be a necessary element in proving his awareness of its contents. The circumstances may warrant the inference that he was aware of what a book contained, despite his denial.' (*Smith v. California*, 361 U.S. at 154.) The obscene quality of the books was amply evidenced by their covers which defendant had to observe because it was he who placed the books on the racks. Significantly, all the books with such covers were located on the same side of one rack. Defendant expressed his disapproval of these types of books to the arresting officers and indicated he would not sell them to minors. Under these facts and circumstances, we hold that the trial judge did not err in holding that *scienter* was established." 41 Ill. 2d 135, 139-40, 242 N.E.2d 761, 763.

This court has also stated before that eyewitness testimony that a defendant perused a magazine or book is unnecessary to establish knowledge where the cover of the publication puts the seller on notice as to that publication's obscene nature. In *City of Chicago v. Doe*, 47 Ill. App. 2d 460, 197 N.E.2d 711, we stated:

"As to the magazine Spice, which sold for 50 cents, and was taken from the book rack by the plaintiff's police officer, for which he paid the defendant, a casual observation of the front and back covers of this magazine, and the fact that on the front cover the words 'Adults Only' appear, constitute, in our opinion, a clear preponderance of evidence of scienter. The front and back covers of this magazine contain offensive and obscene pictures.

"Eyewitness testimony of a bookseller's perusal of a book hardly need be a necessary element in proving his awareness of its contents. The circumstances may warrant the inference that he was aware of what a book contained, despite his denial. *Smith v. California*, 361 US 147." 47 Ill. App. 2d 460, 467, 197 N.E.2d 711, 715.

■■ In examining the covers of the magazines sold by the other defendants, we find that they too are sufficient to make the seller aware of the substantial probability that the magazines were of an obscene nature.

The magazine defendant Speer sold, "Playmate" No. 7, announced on its cover in bold letters WORLD'S NUMBER 1 EROTIC MAGAZINE, ENTIRELY FULL COLOR." Despite the few pages and small size its price was $3. The front cover of the magazine James Grant sold, "Sinsear," volume 1, No. 4, is dominated by a color photograph of a man and woman engaging in sexual intercourse. The magazine "Climax" sold by Victoria Stove has an obscene cover which is dominated by a color photograph of a completely naked man and woman engaging in sexual intercourse. The price is $10, and above the title the magazine announces, "16 pages Erotic Color." Some of the covers are obscene themselves and the others leave no doubt as to what type of materials the magazines contain. Their unusually high price also adds evidence of their obscene nature and contents. While the covers alone are sufficient to put a seller of these magazines on notice as to their obscene nature, there was also other evidence that these three defendants were aware of the character of these magazines. Speer and Grant were shown pages of the magazines by the police officers and stated they would not sell these magazines to minors. Victoria Stove even told the officer that, "this is pornography." We are of the opinion that there was sufficient evidence to establish beyond a reasonable doubt that defendants Speer, Grant, Stove and Glass had knowledge of the nature or content of the magazines they sold.

The defendants' next contention is that the magazines are not obscene in the constitutional sense and are therefore protected under the first and fourteenth amendments to the United States Constitution. The test for determining whether certain allegedly obscene materials are protected by the First Amendment was set forth by the United States Supreme Court in *Miller v. California,* 413 U.S. 15, 24, 37 L. Ed. 2d 419, 431, 93 S. Ct. 2607, 2615:

> "The basic guidelines for the trier of fact must be: (a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest, Kois v. Wisconsin, supra, at 230, 33 L. Ed. 2d 312, quoting Roth v. United States, supra, at 489, 1 L. Ed. 2d 1498; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value."

This test has been applied in Illinois beginning with *People v. Ridens,* 59 Ill. 2d 363, 321 N.E.2d 264. In a question of this nature a reviewing court is required to make an independent judgment as to whether each publication is obscene or constitutionally protected. *City of Chicago v. Geraci,* 46 Ill. 2d 576, 264 N.E.2d 153.

■■ Each of the magazines sold by the five defendants primarily

consist of photographs of naked or almost naked men and women engaging in actual or imminent sex acts including intercourse, fellatio, cunnilingus and masturbation. The photographs focus primarily on the genital areas of those individuals pictured. Four of the five magazines contain some innocuous textual material distributed sparsely through the publications which have a sexual theme, but the magazines are dominated by the photographic materials. It has been held that publications which mainly consist of photographs of naked persons that primarily focus on the exposed genitals or which depict actual or imminent sex acts such as intercourse, fellatio, cunnilingus and masturbation are obscene and not protected by the Constitution. (*City of Chicago v. Geraci*, 46 Ill. 2d 576, 264 N.E.2d 153; *People v. Gould*, 60 Ill. 2d 159, 324 N.E.2d 412; *People v. Penney*, 7 Ill. App. 3d 191, 287 N.E.2d 220.) We are of the opinion that in applying contemporary community standards all of these publications appeal primarily to the prurient interest, depict sexual conduct in a patently offensive way and taken as a whole lack serious literary, artistic, political or scientific value. We find that the photographic material is the central reason for each magazine's publication, and that the innocuous textual material sparsely distributed through some of the magazines fails to bring them within the protection of the Constitution. *City of Chicago v. Geraci*, 46 Ill. 2d 576, 264 N.E.2d 153; *People v. Penney*, 7 Ill. App. 3d 191, 287 N.E.2d 220.

■■ The defendants' final contention is that the complaint charging defendant James Grant with obscenity was void for uncertainty because it uses the disjunctive "or" which leaves to conjecture with which of the two alternatives he was charged. The complaint against James Grant states that James Grant:

> "committed the offense of Obscenity in that he with knowledge of the nature and content thereof sold an obscene magazine to wit: 'Sinsear' Vol. 1 No. 4 to Nicholas Ahrens for the sum of $3.50 U.S.C. *or* recklessly failed to exercise reasonable inspection which would have revealed the magazine 'Sinsear' Vol. 1 No. 4 that he sold to Nicholas Ahrens for the sum of $3.50 U.S.C. was obscene." (Emphasis added.)

In examining the complaint's wording it is clear that James Grant was charged with a single act, that of selling an obscene magazine. The use of "or" in the complaint only sets apart the two mental states which the obscenity statute provides: that the seller had knowledge of the publication's nature or content or had recklessly failed to inspect the publication which would have revealed the publication's nature or contents. Defendants cite *People v. Heard*, 47 Ill. 2d 501, 266 N.E.2d 340. The court in *Heard* stated, "While a charge which follows the language of the statute defining the crime and uses the disjunctive 'or' will be

sufficient under some circumstances, it will not be sufficient where the statute names disparate and alternative acts, any one of which will constitute the offense." (47 Ill. 2d 501, 504, 266 N.E.2d 340, 342.) In that case the defendant was charged with a variety of acts including setting up or promoting a policy game or selling a policy ticket or possessing a policy ticket. The defendant was charged with a number of distinct acts connected with the disjunctive "or" while in our case the defendant was charged with a single act: selling an obscene magazine. The precise issue was considered by this court recently in *People v. Better*, 33 Ill. App. 3d 58, 337 N.E.2d 272. In *Better* the complaint used the disjunctive "or" in separating a sale with knowledge from a sale with reckless failure to inspect. We held in *Better* that the complaint was not void and also noted that there was evidence to support the conviction under either of the mental states. In the instant case we also find sufficient evidence to support the conviction under either of the mental states. The use of the word "or" in an indictment or complaint is not a fatal defect unless it renders the statement of the offense uncertain. (*People v. Farrell*, 349 Ill. 129, 181 N.E. 703; *People v. Smith*, 14 Ill. App. 3d 281, 302 N.E.2d 376.) It was clear from the complaint that James Grant was charged with the single act of selling an obscene magazine, "Sinsear" Vol. 1 No. 4, and the use of the word "or" to contrast the two mental states he may have possessed at the time of the sale in no way prejudiced his ability to defend himself. We are of the opinion that the complaint charging James Grant with obscenity was not fatally defective.

We have read the opinion of the three-judge district court convened in the United States District Court for the Northern District of Illinois and filed on May 28, 1976, in *Eagle Books, Inc. v. Reinhard*, No. 76 C 20014 (N.D. Ill. May 28, 1976). As that opinion points out, section 11—20 has been repeatedly upheld by the Illinois Supreme Court. The three-judge district court also observed that State trial courts are bound by their State supreme court, especially where the State supreme court has construed a ruling by the United States Supreme Court as the Illinois Supreme Court did in the case popularly referred to as *Ridens II (People v. Ridens*, 59 Ill. 2d 362, 321 N.E.2d 264). The same observation applies to State intermediate reviewing courts as they too are bound by their supreme court. Moreover, the case before us involves purchases and subsequent prosecutions and not searches and seizures of allegedly offending material as in *Eagle Books*. We believe our conclusions conform to the holdings of our supreme court in *Ridens II, People v. Hume, Inc.*, 60 Ill. 2d 397, 327 N.E.2d 329, and *People v. Ward*, 63 Ill. 2d 437, 349 N.E.2d 47. Although this court should certainly give attention to holdings of a three-judge United States district court relating to the constitutionality of Illinois statutes, and particularly a court whose jurisdiction is in the same area as

this court's, we must also adhere to the principle announced in *United States ex rel. Lawrence v. Woods* (7th Cir. 1970), 432 F.2d 1072. Accordingly the judgments are affirmed.

Judgments affirmed.

SIMON and O'CONNOR, JJ., concur.